LAWANDA LOCKHART

V.

COMMONWEALTH EDUCATION SYSTEMS CORPORATION,
D/B/A COMMONWEALTH COLLEGE

Record No. 921503

NANCY L. WRIGHT

V.

DONELLY & COMPANY, ET AL.

Record No. 930205

January 7, 1994

Present: All the Justices

*(Timothy T. Blank),* for appellant. (Record No. 921503)
*(Thomas M. Lucas; Thomas F. Hennessy; Vendeventer, Black, Meredith & Martin,* on brief), for appellee. (Record No. 921503)
*John M. Bredehoft (Elaine C. Bredehoft; Charson & Bredehoft,* on brief), for appellant. (Record No. 930205)
*Edward B. MacMahon, Jr.* for appellees. (Record No. 930205)

JUSTICE HASSELL delivered the opinion of the Court.

## I.

In these appeals, we consider whether former employees who allege they were terminated from their respective at-will employments because of their race and sex have causes of action against their former employers for wrongful discharge.

The trial courts decided both cases on demurrers. Therefore, we will recite the facts in accordance with well-established principles that a demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts. *Palumbo* v. *Bennett,* 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991).

## II.

### A.

Lawanda Lockhart filed her motion for judgment against Commonwealth Education Systems Corporation, doing business as Commonwealth College. Ms. Lockhart is an African-American who was employed by Commonwealth College at its Richmond campus as the director of admissions.

According to her motion for judgment, Commonwealth College implemented policies and practices of racial discrimination against African-Americans in violation of certain federal statutes and the established public policy of Virginia by discouraging African-Americans from enrolling as students and discriminating against African-Americans in its hiring practices. Ms. Lockhart claimed that Brenda Bryan, president of the Richmond campus, tried to force her to fire, solely on the basis of race, certain African-American employees of Commonwealth College because those employees failed to satisfy production goals, even though white employees who failed to satisfy these goals were retained.

Ms. Lockhart alleged that she was present when high-level employees of Commonwealth College made racially derogatory remarks and jokes about African-Americans. On another occasion, D. White, registrar and minority affairs officer of Commonwealth College, made racially offensive comments to Ms. Lockhart when she was attending a meeting with prospective students.

Ms. Lockhart reported these alleged violations of law to her superiors. She refused to participate in practices and policies of Commonwealth College that violated these laws. In retaliation of Ms. Lockhart's refusal to participate in, and her opposition to, Commonwealth College's racially discriminatory practices and procedures, she was demoted from her position as director of admissions to the position of senior admissions representative.

Thereafter, Ms. Lockhart contacted the National Association for the Advancement of Colored People (NAACP) and a private attorney and sought their assistance. The attorney and representatives of the NAACP contacted representatives of Commonwealth College. Subsequently, Ms. Lockhart's superiors gave her an unsatisfactory job performance evaluation and, two days later, discharged her "amid claims her performance was inadequate even though white co-workers, with markedly less productivity, were retained."

Ms. Lockhart filed this action alleging that her unsatisfactory performance evaluation and termination were racially motivated and in direct retaliation for her refusal to participate in and her opposition to Commonwealth College's racially discriminatory practices and policies. Commonwealth College filed a demurrer which was sustained by the trial court on the basis that Virginia does not recognize a cause of action for wrongful discharge of employment under these circumstances. We awarded Ms. Lockhart an appeal.

B.

In June 1991, Nancy L. Wright approached Wayne B. Donelly, president of Donelly & Company, a sole proprietorship, and asked if he had an interest in hiring her. In July 1991, Mr. Donelly contacted Ms. Wright by telephone and indicated that a position was available as an administrative assistant. They met and Mr. Donelly offered Ms. Wright the job, which she later accepted.

On July 22, 1991, Ms. Wright began employment with Donelly & Company. Mr. Donelly approached her from behind, kissed her cheek, and said "good morning." The next day, after Ms. Wright reported to

work, Mr. Donelly "physically seized her, grabb[ed] her and hugg[ed] her without her consent." Ms. Wright advised Mr. Donelly that she did not intend to be subjected to this treatment and that she could not work under these conditions. Mr. Donelly told Ms. Wright that "we would work things out." On July 24, 1991, Ms. Wright reported to work, and Mr. Donelly made repeated abusive, inappropriate, and harassing remarks to her. Ultimately, he ordered her to "get out!"

Subsequently, Ms. Wright filed an amended motion for judgment against Donelly & Company and Mr. Donelly alleging, among other things, that her discharge was unlawful because it violated the public policy of Virginia as articulated in Virginia's Human Rights Act, Code §§ 2.1-714 through 2.1-725. The trial court sustained a demurrer filed by the defendants on the basis that Ms. Wright failed to plead a cause of action for wrongful discharge recognized in Virginia. We awarded Ms. Wright an appeal.

### III.

Virginia strongly adheres to the employment-at-will doctrine. We have stated:

> Virginia adheres to the common-law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.

> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer.

*Miller* v. *SEVAMP, Inc.*, 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987) (citations omitted).

This rule, however, is not absolute, and we recognized certain narrow exceptions in *Bowman* v. *State Bank of Keysville,* 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985). There, Betty P. Bowman and Joyce T. Bridges filed actions against the State Bank of Keysville and certain other persons associated with the bank. Bowman was employed by the bank as a bookkeeper, and Bridges was the bank's head book-

keeper. Bowman and Bridges owned five and six shares, respectively, of the bank's common stock. *Id.* at 536, 331 S.E.2d at 798-99.

Bowman and Bridges alleged in their motions for judgment that the bank's management had negotiated a proposed merger with another corporation that required approval of the bank's stockholders. A special meeting of the stockholders was arranged, and the bank's board of directors prepared and mailed to each stockholder of record a proxy statement. Members of the bank's board of directors knew many stockholders opposed the merger. *Id.* at 536-37, 331 S.E.2d at 799.

The bank's president informed Bowman and Bridges that they would be terminated if they failed to vote in favor of the merger. Bowman and Bridges executed their proxy cards in favor of the merger under duress and out of fear of losing their jobs. The merger was approved by eight votes more than the number necessary to constitute the required two-thirds majority. Two days after the special meeting, Bridges and Bowman informed the bank president, by letter, that their proxies were invalid, illegally obtained, "improper and null and void." Therefore, there were insufficient votes necessary for the approval. Subsequently, the bank's board of directors voted to abandon the merger, and a majority of the members of the board of directors voted to discharge Bridges and Bowman from their employment with the bank. *Id.*

The defendants in *Bowman* argued that because Bridges and Bowman were at-will employees, the Bank could terminate them after reasonable notice for any reason or no reason at all. The former employees argued that the bank and the named board members, utilizing "actions which violated securities and corporation laws, sought to influence the exercise of protected shareholder rights by bringing pressure to bear on the vulnerable employee relationship, and that the employment-at-will rule does not protect the defendants from such conduct." *Id.* at 539, 331 S.E.2d at 800. Agreeing with the former employees in *Bowman,* we observed:

> In the present cases, the retaliatory discharges were based on violations of public policy by the defendants. Code § 13.1-32 [now Code § 13.1-662] conferred on these plaintiffs as stockholders the right to one vote, for each outstanding share of stock held, on each corporate matter submitted to a vote at a meeting of stockholders. This statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management. In order for the goal of the statute to be realized and the public

policy fulfilled, the shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer. Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

Consequently, applying a narrow exception to the employment-at-will rule, we hold that the plaintiffs have stated a cause of action in tort against the Bank and the named directors for improper discharge from employment.

*Id.* at 540, 331 S.E.2d at 801.

■ In *SEVAMP*, we explained that the narrow exception recognized in *Bowman* is limited "to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." 234 Va. at 467-68, 362 S.E.2d at 918 (emphasis in original).

Ms. Lockhart argues that the narrow exception to the employment-at-will doctrine that we recognized in *Bowman* includes a cause of action where the former employee alleges wrongful discharge because of racial discrimination. Similarly, Ms. Wright contends that her claim of wrongful discharge based upon gender discrimination falls within that narrow exception. Commonwealth College, Donelly & Company, and Mr. Donelly, however, assert that their respective former employees' claims for wrongful discharge do not fall within the *Bowman* exception.

■ We hold that Ms. Lockhart and Ms. Wright pled viable causes of action. In *Bowman,* we recognized the plaintiffs' rights to bring actions for wrongful discharge based upon violations of Virginia's public policy that a stockholder should be permitted to exercise the right to vote stock free of duress and intimidation from corporate management. Here, however, we are concerned with rights of even greater importance, the personal freedom to pursue employment free of discrimination based upon race or gender. Indeed, there are few, if any, greater restrictions on personal freedoms that an employee can suffer than to be terminated because of discrimination based upon race or gender.

■ The General Assembly has declared this Commonwealth's strong public policy against employment discrimination based upon race or gender. Code § 2.1-715, which is a part of the Virginia Human Rights Act, states in part:

> It is the policy of the Commonwealth of Virginia:
>
> 1. To safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability, in places of public accommodation, including educational institutions and in real estate transactions; in employment; to preserve the public safety, health and general welfare; and to further the interests, rights and privileges of individuals within the Commonwealth.

■ We recognize that the Virginia Human Rights Act does not create any new causes of action. Code § 2.1-725. Here, we do not rely upon the Virginia Human Rights Act to create new causes of action. Rather, we rely solely on the narrow exception that we recognized in 1985 in *Bowman,* decided two years before the enactment of the Virginia Human Rights Act.

Without question, it is the public policy of this Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender. Indeed, racial or gender discrimination practiced in the work place is not only an invidious violation of the rights of the individual, but such discrimination also affects the property rights, personal freedoms, and welfare of the people in general.

■ We find no merit in Commonwealth College's argument that Ms. Lockhart's action does not fall within the narrow *Bowman* exception because she may have adequate statutory remedies available under certain federal statutes. It is not uncommon that injuries resulting from one set of operative facts may give rise to several remedies, including common law tort remedies as well as federal statutory remedies.* Indeed, in *Bowman,* the former employees specifically alleged, among other things, that the proxy statement that the board of

---

* At least one of the federal civil rights statutes implicated here, Title VII, 42 U.S.C. § 2000e-7, states: "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State." Additionally, Commonwealth College's argument that Ms. Lockhart is required to exhaust her administrative remedies under Title VII is not applicable here because she filed a common law tort action alleging wrongful discharge, which is governed solely by state, not federal, law.

directors prepared and mailed to each stockholder of record was false and misleading in violation of federal securities laws and laws of Virginia. *Bowman*, 229 Va. at 536, 331 S.E.2d at 799.

## IV.

■ We do not retreat from our strong adherence to the employment-at-will doctrine. We merely hold that the narrow exception to that doctrine, which we recognized in Bowman, includes instances where, as here, employees are terminated because of discrimination based upon gender or race. The discharges of Ms. Lockhart and Ms. Wright are allegedly tortious not because they have a vested right to continued employment, but because their employers misused the freedom to terminate the services of at-will employees by purportedly discriminating against their employees on the basis of race and gender.

Accordingly, we will reverse the judgments of the trial courts and remand these cases for further proceedings consistent with this opinion.

Record No. 921503 - *Reversed and remanded.*
Record No. 930205 - *Reversed and remanded.*

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE STEPHENSON join, dissenting.

The Virginia Human Rights Act (the Act) provides that: "Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination." Code § 2.1-725.

The majority merely salutes this statute in passing by saying, "Here, we do not rely upon the Virginia Human Rights Act to create new causes of action. Rather, we rely solely on the narrow exception that we recognized in 1985 in *Bowman,* decided two years before the enactment of the Virginia Human Rights Act." Those statements are not convincing because it is obvious that today the majority, contrary to the explicit language of the Act, allows private causes of action to enforce the Act's provisions; it also allows generalized, common-law actions for wrongful discharge to be maintained in addition to the statutory actions currently available for unlawful discrimination.

The foregoing failure to follow the mandates of the Act results in an unwarranted encroachment upon Virginia's employment-at-will doctrine, rigidly adhered to by this Court until now.

I would affirm the judgments in both cases.