## CIRCUIT COURT OF THE CITY OF ROANOKE

Lisa Bailey

v.

Scott Gallaher, Inc.

December 19, 1995

Case No. CL95-742

BY JUDGE CLIFFORD R. WECKSTEIN

Under Virginia law, employers and employees generally may sever their relationships with one another at any time, with or without cause. The question raised by this case is whether there is an exception to this rule of "employment at will" when an employee is discharged because of pregnancy or childbirth.

The plaintiff, Lisa Bailey, brought this suit against her former employer, Scott Gallaher, Inc. In her motion for judgment, Ms. Bailey alleged that Scott Gallaher's "company president told Bailey that the company had discharged her because she was no longer dependable since she had delivered a child; that Bailey's place was at home with her child; that babies get sick sometimes and Bailey would have to miss work to care for her child; and that he needed someone more dependable." The defendant, Scott Gallaher, responded to the motion for judgment by filing a demurrer, a pleading which denies that the motion for judgment states facts upon which relief can be granted.

When a demurrer is filed, the court "will consider the allegations pursuant to the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Nasser v. Parker*, 249 Va. 172, 174, 455 S.E.2d 502 (1995), *quoting Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

In her motion for judgment, the plaintiff avers that Scott Gallaher "(a) discriminated against Bailey with respect to the terms, conditions, or privileges of her employment because of her sex; and (b) fired Bailey on

account of her sex." " 'While a demurrer admits as true all averments of material facts which are sufficiently pleaded, it does not admit the correctness of the conclusions of law stated by the pleader.' *Arlington Yellow Cab Co. v. Transportation, Inc.*, 207 Va. 313, 318-19, 149 S.E.2d 877, 881 (1966)." *Concerned Taxpayers of Brunswick County v. Brunswick County*, 249 Va. 320, 326, 455 S.E.2d 712 (1995).

In Virginia, the relationship between employer and employee is presumed to be terminable at will. Thus, either party may terminate the employment relationship for any reason or for no reason. *Graham v. Central Fidelity Bank*, 245 Va. 395, 398, 428 S.E.2d 916 (1993). Bailey, acknowledging this principle, nonetheless asserts that she has stated a claim for which relief is available. This is so, she reasons, because in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), the Virginia Supreme Court articulated a "public policy exception to the employment at will rule," plaintiff's Memorandum in Opposition, at 3, and in *Lockhart v. Commonwealth Education Systems*, 247 Va. 98, 439 S.E.2d 328 (1994), the Supreme Court held that this "public policy exception" precludes employers from engaging in discrimination based on race or gender.

Both Bailey and Scott Gallaher characterize Bailey's claim as one of "pregnancy discrimination." *See* plaintiff's Memorandum in Opposition at 4, 7-9; plaintiff's letter-memorandum, dated November 21, 1995, at 1; defendant's letter-memorandum dated November 10, 1995. "The issue before the court," plaintiff's attorney wrote, "is, simply put, whether a female employee's giving birth is grounds for termination of employment in Virginia." Plaintiff's letter-memorandum of November 21, 1995, at 1.

Accepting the characterization that both parties have placed upon this case, I find that an employee whose employment was terminated because of pregnancy or because she gave birth has not stated a claim cognizable under the exceptions to the employment at will doctrine articulated in *Bowman* and *Lockhart*.

Because I have so concluded, I need not reach questions, raised by the defendant, about the effect of 1995 amendments to the Virginia Human Rights Act.[1]

---

[1] The defendant, in its memorandum and more explicitly in oral argument, also has invited me to conclude that a circuit court need not consider itself bound to follow *Lockhart*, either because "[t]his decision was wrong," defendant's Memorandum in Support of Demurrer, at 12, or because one of the Justices who was in the *Lockhart* majority has retired, defendant's Memorandum, at 9. I decline the invitation: "In Virginia, the doctrine of stare decisis is more than a mere cliche. That doctrine plays a significant role in the

"In [*Miller v.] Sevamp, [Inc.*, 234 Va. 462, 362 S.E.2d 915 (1987)], we explained that the narrow exception recognized in *Bowman* is limited 'to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general.' 234 Va. at 467-68, 362 S.E.2d at 918 (emphasis is original)." *Lockhart*, 247 Va. at 104. In *Lockhart*, a plaintiff "contend[ed] that her claim of wrongful discharge based upon gender discrimination falls within that narrow exception," *Id.*, and the Supreme Court agreed that "it is the public policy of this Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender." *Id.* at 105.

Bailey argues that because only women can become pregnant or give birth, then discharge based upon pregnancy or childbirth must perforce be "wrongful discharge based upon gender discrimination." *See, e.g.*, plaintiff's letter reply memorandum, at 1.

Unfortunately for Bailey, she is not the first Roanoke Valley resident to file a suit alleging that (in the words of her lawyer) "disparate treatment of female employees because they have the capacity to give birth or have in fact given birth is a quintessential expression of gender discrimination." *Id.* Such a claim was made by Martha Gilbert and others who were employed at the General Electric Company's plant in Salem, Virginia, and who were pregnant during 1971 or 1972. *General Electric Co. v. Gilbert*, 429 U.S. 125, 128-29, 97 S. Ct. 401, 50 L. Ed. 2d 343, 350, *rehearings denied* 429 U.S. 1079, 97 S. Ct. 825, 50 L. Ed. 2d 799-800 (1976).

*Gilbert* is not a wrongful discharge case. Gilbert and her fellow employees brought suit under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), § 703(a)(1) of which provided in part that it was unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." *Gilbert, supra*, 50 L. Ed. 2d at 352. Each of the plaintiffs in *Gilbert* asserted "that

---

orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles. And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake." *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265, 355 S.E.2d 579 (1987). A court of inferior jurisdiction is not at liberty, notwithstanding the defendant's arguments, to conclude that the state's court of last resort reached a decision through "flagrant error."

the refusal of General Electric to pay disability benefits under [a disability plan provided by G.E. to all of its employees] for time lost due to pregnancy and childbirth discriminated against her because of sex." *Id.* at 350. The United States Supreme Court rejected these assertions.

The Court, speaking through Justice (now Chief Justice) Rehnquist, acknowledged that "it is true that only women can become pregnant," *Id.* at 353 (*quoting Geduldig v. Aiello*, 417 U.S. 484, 496-97, n. 20, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974)), and that "[p]regnancy is, of course, confined to women." *Id.* at 354. Nonetheless, the Court held that when G.E. excluded coverage for disability relating to pregnancy and childbirth, it did not practice "gender-based discrimination." *Id.*

The plaintiffs in *Gilbert*, like Bailey, did not allege that their employer had engaged in conduct of the sort that has traditionally been understood to constitute "discrimination" in the employment setting. This is significant.

"While there is no necessary inference that Congress in choosing [the] language [of § 703(1)(1)] intended to incorporate into Title VII the concepts of discrimination which have evolved from court decisions construing the Equal Protection Clause of the Fourteenth Amendment," the Court said, "the similarities between the congressional language and some of those decisions surely indicate that the latter are a useful starting point in interpreting the former. Particularly in the case of defining the term 'discrimination,' which Congress has nowhere in Title VII defined, those cases afford an existing body of law analyzing and discussing that term in a legal context not wholly dissimilar to the concerns which Congress manifested in enacting Title VII." *Id.* at 352.

"When Congress makes it unlawful for an employer to 'discriminate . . . because of . . . sex . . .' without further explanation of its meaning, we should not readily infer that it meant something different from what the concept of discrimination has traditionally meant [citations omitted]," Justice Rehnquist wrote. "There is surely no reason for any such inference here [citation omitted]." *Id.* at 360.

In *Lockhart*, the Virginia Supreme Court turned to the Virginia Human Rights Act to explicate its determination that the public policy of Virginia prohibits "unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability . . . in employment . . . ." *Lockhart*, 247 Va. at 105, *quoting* Virginia Code § 2.1-715.

Courts are permitted to construe or interpret statutory language if it "is difficult to comprehend, is of doubtful import, or lacks clearness and de-

finitiveness . . . . But when statutory language is clear and unambiguous, the plain meaning and intent of the enactment will be given to it; we take the words as written to determine their meaning." *Lee-Warren v. School Bd. of Cumberland County*, 241 Va. 442, 445, 403 S.E.2d 691 (1992). Assuming that, to discern the public policy of Virginia, I am to look to the same statutory language that the Court quoted in *Lockhart*, Bailey would have me construe the words "unlawful discrimination because of . . . sex . . ." to mean "something different from what the concept of discrimination has traditionally meant." *Gilbert, supra*, at 360. I am compelled by the language, logic, and holding of the *Gilbert* court — the nation's ultimate "court of last resort," *cf. Selected Risks Insurance Co. v. Dean, supra*, 233 Va. at 265 — to conclude that the words of the Virginia Human Rights Act are clear and unambiguous; that there is no room in this language for pregnancy and childbirth into the words "discrimination because of . . . sex." To put this differently: When the Supreme Court of the United States has held that an employer which engages in disparate treatment because of pregnancy and childbirth does not "discriminate . . . because of . . . sex . . ." then a trial court judge is bound to read the same words in the same way.

Apparently as a result of the *Gilbert* decision, Congress enacted the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000(e)(k), which proscribes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." Bailey argues that, although no specific Virginia statute prohibits discharge based on pregnancy or childbirth, and although the Virginia Human Rights Act does not, in explicit terms, prohibit such a discharge, the *Bowman-Lockhart* exception to the rule of at-will employment is broad enough to encompass the federal Pregnancy Discrimination Act. She asserts "that federal statutes as well as state law serve as sources of public policy in Virginia," plaintiff's Memorandum, at 10, and that the *Bowman-Lockhart* exception is therefore broad enough to give employees who claim that they have been fired in violation of a federal statute the right to maintain a suit in state court.

In *Bowman*, in *SEVAMP*, and in *Lockhart*, the Supreme Court repeatedly characterized the public policy exception to the employment at will doctrine as a "narrow" one. An exception large enough to encompass the entire corpus of Congressional enactments, however, would not be a "narrow" one; it would be broad, wide, and deep. In the absence of specific legislation adopted by the Virginia General Assembly or specific direction by the Virginia Supreme Court, I cannot give such an unnatural construc-

tion to the term "narrow exception." Furthermore, in *Lockhart* itself, the Supreme Court had the opportunity to discuss the effect of federal civil rights legislation on the existence of the Virginia cause of action for sex discrimination. The Court rejected an employer's "argument that Ms. Lockhart's action does not fall within the narrow *Bowman* exception because she may have adequate statutory remedies available under certain federal statutes." *Lockhart, Id.*, 247 Va. at 105-06. The Court, discussing these federal statutes, did not avail itself of the opportunity, obviously presented by this argument, to hold that these statutes were declarative of Virginia public policy. Instead, the Court distinguished between the exercise of "common law tort remedies," such as those pursued by the plaintiffs in *Bowman* and *Lockhart* and "federal statutory remedies." *Id.* I decline the plaintiff's invitation to go where the Supreme Court chose not to travel.

The plaintiff has cited an opinion written by Judge James C. Turk of the United States District Court for the Western District of Virginia, *Fielder v. Southco, Inc., of South Carolina*, 699 F. Supp. 577 (W.D. Va. 1988), in support of the proposition that the *Bowman-Lockhart* exception incorporates rights articulated by federal statutes. In *Southco*, Judge Turk simply held that the plaintiff had stated a cause of action for retaliatory discharge, within the *Bowman* public policy exception, when he "allege[d] he was discharged in retaliation for having reported instances of sexual harassment of female employees by plaintiff's supervisor." *Id.*, 699 F. Supp. at 577-78. Anticipating *Lockhart*, Judge Turk assumed that *Bowman* encompassed a public policy of "protection of female employees from sexual harassment by their supervisors." *Id.* at 578. He then drew an analogy to federal statutory law, which provides that it is an unlawful employment practice to discriminate against an employee because that employee opposed another unlawful employment practice. *Id.* Although, in *Southco*, Judge Turk may have, for convenience, assumed an overlap between the public policies adopted by Congress and those of Virginia, a more illuminating view of that judge's perception can be found in *Hunley v. First Union Nat' l Bank of Va.*, _____ F. Supp. _____ (C/A 95-759-R, Oct. 31, 1995), in which Judge Turk wrote:

> Contrary to the plaintiff's position, the exception recognized in *Lockhart* was limited to gender and racial discrimination. The Justices explicitly stated that the exception being carved out was strictly limited to "the personal freedom to pursue employment free from discrimination based upon race or gender." *Id.* at 104,

439 S.E.2d at 331. Further, the entire *Bowman* line of public policy exceptions to the employment at will doctrine is based on underlying Virginia statutory authority. There are several statutory sections within the Virginia Code which provide a private cause of action for retaliatory discharge, but again, the Virginia Human Rights Act is not one of them.

*Id.* (citations omitted). Just as the federal court, in *Hunley*, found that "Virginia has never recognized a public policy exception to the employment at will doctrine for age discrimination," *Id.*, I find that existing Virginia law recognizes no public policy exception to the employment at will doctrine for discharge based upon pregnancy or childbirth.

Compelling arguments can be made in favor of a public policy that protects an employee's position in the workplace during pregnancy and upon childbirth. Congress, in enacting the Pregnancy Discrimination Act, accepted such arguments. Enlightened public policy might very well prohibit the sort of actions about which Bailey complains in this case. It is not the place of the judiciary, however, to adopt and articulate public policy of this sort. Such public policy and such an exception to the doctrine of termination at will must be declared by the General Assembly.

Accordingly, the defendant's demurrer is sustained, and the motion for judgment will be dismissed with prejudice.