**Debora L. FLOWERS, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civil Action No. 2:95cv1115.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 7, 1996.

---

Carl W. Isbrandtsen, Virginia Beach, VA, for Plaintiff.

Richard H. Matthews, Pender & Coward, Virginia Beach, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This case is before the court for resolution of the defendant's motion for summary judgment. For the reasons which follow, the motion is **DENIED**.

### A. Factual and Procedural History

The relevant facts of the case are not in dispute. Beginning in 1992, plaintiff, Debora L. Flowers, worked for various Sam's Club Warehouses in Virginia and North Carolina. In May, 1995, she was working for the Sam's Club in Cary, North Carolina. For personal reasons, Flowers approached her supervisor, seeking a transfer from the Cary store to a store in Virginia. Her supervisor, Martin Honan, agreed to try to locate a position for her. He made several calls to Virginia Sam's Clubs but was unable to locate a position. At Flowers' request, he then contacted a number of Virginia area Wal–Mart stores to try to find a position.[1]

Honan spoke with the manager of the Chesapeake Wal–Mart, John Quinn, who said he had a position available. Honan conveyed this information to Flowers, and left the details of the transfer to be negotiated by her. Flowers spoke with Quinn who agreed to hire her at a salary of $8.40 per hour. Flowers acknowledges that there was never any promise of employment for a definite period of time.

After she contacted the Chesapeake store, Flowers and the North Carolina Store Manager, Honan, executed a "Transfer Notice for Hourly Personnel." This Transfer Notice included references to her original hire date, her reason for the transfer, her anticipated salary, and the conditions necessary to effectuate the transfer. In addition, the Transfer Notice bears the signatures of Flowers and Honan, as well as an acknowledgement that the transfer had been approved by the district manager. The Transfer Notice also specifically references the transfer conditions set forth in the *Welcome to Wal–Mart* associate handbook, all of which conditions Flowers met.

Subsequent to executing this Transfer Notice, Flowers made arrangements to move, hiring a moving van and leasing an apartment in Virginia. When she arrived in Virginia, Flowers met with the personnel people at the Chesapeake store and was advised that she would need a medical clearance as a result of a recent injury to her wrist. In addition to this clearance, the Wal–Mart requested a drug screening as required in the Transfer Notice. Flowers obtained a negative screen for drugs and the required medical clearance. However, when she reported for work in early June, 1995, Quinn had been replaced as the Wal–Mart store manager by Heath Hamilton. Hamilton refused to hire Flowers, without stating a reason, other than it was his choice who to hire, and he was not going to hire Ms. Flowers.

Flowers brought this suit in state court in October, 1995. Wal–Mart removed the case to this court. In her suit, Flowers contends that Wal–Mart's actions gave rise to a "bind-

---

1. Sam's Club and Wal–Mart are both divisions of Wal–Mart Stores, Inc., the present corporate de-fendant.

ing transfer agreement," which Wal–Mart breached in failing to hire her at the Chesapeake store. She also alleges that Wal–Mart made the promise of employment with "the present intention not to perform its obligations." Thus, she claims she is entitled to damages on a fraud theory.

On May 1, 1996, Wal–Mart filed the present motion for summary judgment, along with a supporting memorandum and the affidavits of Chris Mehler, the district manager for Wal–Mart stores in southeastern Virginia, and Martin Honan, Flower's former supervisor in North Carolina. Wal–Mart argues that the undisputed facts in the record show nothing more than an at will employment relationship which it voluntarily terminated. The Chesapeake store manager's refusal to hire Flowers, according to Wal–Mart, was simply the revocation of an offer of at will employment, which under Virginia law cannot give rise to damages.

Flowers filed a memorandum in opposition, along with her own affidavit and supporting documents on May 10, 1996. Flowers claims that she had a separate, enforceable transfer agreement, supported by adequate consideration. Wal–Mart filed a reply brief on May 14, 1996. The court heard oral argument on May 15, 1996, and the matter is now ready for decision.

*B. Analysis*

■ Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). The parties agree that this action, which was removed on diversity grounds, is

governed by Virginia law. "It is a fundamental principle under Virginia law, that if no specific time is fixed for the duration of employment, it is presumed to be an employment at will." *Sneed v. American Bank Stationary Co.,* 764 F.Supp. 65, 67 (W.D.Va. 1991) (citing *Norfolk S. Ry. Co. v. Harris,* 190 Va. 966, 976, 59 S.E.2d 110 (1950)). There is no dispute, therefore, that Flowers' employment at the Virginia Wal–Mart was terminable at will.[2]

■ Flowers, acknowledging the at will nature of her employment, nevertheless argues that Wal–Mart was not free to breach their transfer agreement with her. She analogizes her circumstances to those in the Virginia Supreme Court case of *Sea–Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982).

In *Sea–Land,* Nancy O'Neal had sought a different position within the same company to give her more flexibility to pursue her education. *Id.* at 346, 297 S.E.2d 647. The employer, through three different agents, advised her that she could have the new position but that she would have to resign her old job before officially accepting the new one. *Id.* at 347, 297 S.E.2d 647. After she resigned, the employer refused to hire her in the new position saying she was overly qualified. *Id.*

While recognizing that O'Neal was an at will employee, who could have been dismissed by her employer before resigning, or after being hired in the new position, the Court held that the agreement to hire her after she resigned was not subject to the same free terminability.

> This was an undertaking separate and apart from any contract covering the particular position involved and was not subject to any presumption of terminability at will that might have applied to such a contract. Once O'Neal performed her part of the bargain by resigning from the first position, Sea–Land became obligated to perform on its part and breached that

---

**2.** North Carolina, where Flowers worked prior to her transfer, follows a similar at will presumption. *Coman v. Thomas Mfg. Co., Inc.,* 325 N.C. 172, 175, 381 S.E.2d 445 (1989) ("Ordinarily an employee without a definite term of employment is an employee at will and may be discharged without reason.").

obligation to her damage when it refused to employ her [in the new position].

*Id.* at 349, 297 S.E.2d 647. The court focussed on the separate, valid transfer agreement, supported by the valid consideration of plaintiff resigning her former position.

This court finds *Sea–Land* directly on point with the present case. Viewing the facts in the light most favorable to Flowers, as the nonmoving party, it is plain that she was also promised a new job with the same employer.[3] The conditions of obtaining the new position were outlined in the Transfer Notice, which incorporated by reference the transfer policy in the *Welcome to Wal–Mart* associate handbook. *See* Def.Reply, Ex. A.; Pl.Mem. in Opp., Doc. 53. They included meeting certain minimum performance standards, permitting a drug screening test, and obtaining the approval of both the "sending" and "receiving" managers. It is undisputed that Flowers met all of these qualifications. In addition, she resigned her North Carolina job with the company and incurred expenses resulting from her move to Virginia. As a result of Flowers' compliance with these terms, Wal–Mart became bound to perform its part of this "separate agreement," the same as did Sea–Land.

Wal–Mart argues that *Sea–Land* was implicitly overruled by *Sartin v. Mazur,* 237 Va. 82, 375 S.E.2d 741 (1989). In the *Sartin* case, plaintiff applied for a job as a prison nurse. After an interview, she received a letter which stated that she had been "selected for employment," notified her of a starting date, and advised that her salary would be determined after she arrived. Allegedly in reliance on this offer, plaintiff quit a job with her previous employer and relocated to take the new position. When she arrived, she was told she could not start work until after a police investigation was completed. Subsequently she was not hired.

The Virginia Supreme Court held in *Sartin* that the offer was merely one for at will employment, and as such it was revocable at any time. According to the court:

> It would be absurd to require an employer, which had changed its mind after an offer had been made, to actually employ the applicant for one hour or one day so that the employee could then be discharged. Consequently, we hold that an offer for at will employment is terminable at any time, which includes the time before the prospective employee assumes the position.... In this case there was merely an unfulfilled promise to give employment which was revocable at will by the employer.

*Id.* at 85, 375 S.E.2d 741.

On its face, the *Sartin* holding appears inconsistent with the rationale of *Sea–Land.* While *Sartin* holds that it would be "absurd" to require a new employer to fill a position, only to terminate "one hour or one day" later, *Sea–Land* implies the opposite by enforcing the employer's "separate agreement." However, in *Sartin,* the Supreme Court of Virginia specifically acknowledged and addressed its holding in *Sea–Land,* finding and outlining important distinctions between the two cases. 237 Va. at 85, 375 S.E.2d 741. Principal among these differences was the fact that *Sea–Land,* like the present case, involved the same employer which expressly conditioned the new job on compliance with certain prescribed conditions. 237 Va. at 85, 375 S.E.2d 741.[4] In addition, Sea–Land, like Wal–Mart, entered into a separate transfer agreement with a current employee. *Id.* This separate agreement, unlike the underlying contract for employment, is not subject to any presumption of free terminability. *Sea–Land,* 224 Va. at 349, 297 S.E.2d 647.

This court holds, as a matter of law, that on the undisputed facts of the case, Flowers

---

**3.** Counsel for Wal–Mart argues that the two stores were different "employers" because the general managers retained individual hiring authority at each store. The court is not persuaded. The document effecting Flowers' transfer illustrates the intra-corporate nature of the move. According to this Transfer Notice, Flowers was removed from the Cary, North Carolina Sam's Club as a "transfer," not as a "termination."

The receiving store manager was instructed to preserve the transfer's "original hire date." In addition, reference to the "sending" and "receiving" stores indicates the entire process occurs within separate divisions *of the same company.* See Def.Reply., Ex. A; *supra* note 1; *supra* at 2.

**4.** *See supra* at 2 and notes 1 & 3.

has established the existence of a separate, enforceable agreement to transfer, supported by adequate consideration, as envisioned by the Virginia Supreme Court in *Sea–Land.* She is, therefore, entitled to present her case to a jury.[5]

Flowers also asserts a fraud count in her complaint. Wal–Mart's opposition to this count was based solely on the unenforceability of its promise of at will employment. Because the court finds that Wal–Mart's intracorporate promise of new employment in Virginia is enforceable, Flowers is also entitled to pursue her fraud theory at trial.

Accordingly, the motion for summary judgment is **DENIED.**

It is so **ORDERED.**

---

**5.** Although this court recognizes the potential absurdity of the effect of this decision, as did the Virginia Supreme Court in *Sartin, Sea–Land* remains the law in Virginia. Under *Sea–Land* the employer is bound to honor this separate transfer agreement for some period of time. What that period is remains an issue. In any event, the plaintiff, who has relied to her detriment on the transfer agreement by relocating, giving up her *previous* job with the company, and incurring expenses related thereto, is entitled to an opportunity to prove these damages as well as any potential income attributable to the position she was denied. At a minimum, the transfer policy outlined in the associate handbook establishes that transferred employees are generally given 90 days before adverse personnel determinations are made. *See* Pl.Mem. in Opp., Doc. 53. If the new situation is not satisfactory after that 90–day period, the policy outlines a number of options including return to the previous position, demotion or reassignment, and coaching for improvement. *Id.* This transfer policy from the handbook is incorporated by reference into the Transfer Notice. *See* Def. Reply, Ex. A; *supra* at 6.

Finally, the court notes that at will employment in Virginia is not absolute. *See generally, Lockhart v. Commonwealth Educ. Sys. Corp.,* 247 Va. 98, 439 S.E.2d 328 (1994) (recognizing narrow public policy exceptions to the employment at will presumption).