# CIRCUIT COURT OF THE CITY OF NORFOLK

Zora C. Parker

v.

Family Services
of Tidewater, Inc.

February 25, 1997

Case No. L-96-4351

BY JUDGE EVERETT A. MARTIN, JR.

The plaintiff has filed a motion for judgment for wrongful discharge from employment. The first count alleges the defendant breached its duty of good faith and fair dealing that was implied by the plaintiff's employment relationship with the defendant and the defendant's employee handbook. The second count alleges that the plaintiff's termination by reason of her race was in violation of the public policy of the Commonwealth. In her motion for judgment, she recites portions of three paragraphs of the employee handbook that governed her employment, but she does not attach the employee handbook as an exhibit. The defendant has filed a motion craving oyer of the handbook and a demurrer in which it alleges that the motion for judgment fails to state a cause of action because (i) Virginia does not recognize a cause of action for breach of an implied duty of good faith, and (ii) the 1995 amendment to the Virginia Human Rights Act (the "Act"), Va. Code § 2.1-714 *et seq.*, has abrogated the common law cause of action declared in *Lockhart v. Commonwealth Education Systems Corp.*, 247 Va. 98, 439 S.E.2d 328 (1994).

I shall now recite the facts as stated in the motion for judgment. The plaintiff began to work for the defendant on April 11, 1989, and she worked continuously until her termination on January 12, 1996. On October 5, 1995, Gayle Ricks, one of the plaintiff's supervisors accused her of making racist statements, but the defendant determined on October 9, 1995, that the

accusation was unfounded. Ms. Ricks is black, and the plaintiff is white. On October 31, 1995, Ms. Ricks rewrote "the expected outcomes for plaintiff's position," and thereafter on January 9, 1996, Ms. Ricks recommended that the plaintiff be terminated from her employment. After the plaintiff's termination, Ms. Ricks rewrote the job description for the plaintiff's former position lowering its qualifications, and the defendant replaced the plaintiff with a black employee whom the plaintiff had previously supervised. Each year the defendant evaluated the plaintiff's performance, and each year she received a "distinguished" rating, which was the highest evaluation that could be received.

## Count I

The plaintiff has alleged there was an employment contract and the defendant breached its duty of good faith and fair dealing in discharging her. She does not allege that her contract was for any fixed term or that she could only be discharged for cause. For this reason, I need not decide whether the defendant may crave oyer.

The Supreme Court of Virginia has decided three recent cases on the effect of the provisions of an employee handbook on employment at will. *Miller v. SEVAMP*, 234 Va. 462, 362 S.E.2d 915 (1987); *Progress Printing Co. v. Nichols*, 244 Va. 337, 421 S.E.2d 428 (1992); *Graham v. Central Fidelity Bank*, 245 Va. 395, 428 S.E.2d 916 (1993). In each of those cases, the employee claimed the provisions of the employee handbook converted his employment from at will to employment for a fixed term or employment that could only be terminated for cause. The plaintiff has not alleged that in this case. The plaintiff is only claiming the defendant breached its duty of good faith and fair dealing. The Supreme Court of Virginia has never decided if such a duty exists in a contract of employment at will, but several reported Circuit Court decisions have held that it does not. *Burton v. Central Fidelity Bank*, 14 Va. Cir. 159 (1988); *Schryer v. V.B.R.*, 25 Va. Cir. 464 (1991); *Murray v. Cees of Virginia, Inc.*, 29 Va. Cir. 95 (1992); *Spiller v. James River Corp.*, 32 Va. Cir. 300 (1993); *Spencer v. Tultex Corp.*, 37 Va. Cir. 15 (1995). In *Burton, supra*, Judge Sweeney concluded such a duty would be inconsistent with termination at will. I agree. The demurrer to Count I will be sustained.

## Count II

In *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), the Supreme Court of Virginia created an exception to the employment at will

rule when employees had been discharged for exercising their statutory right to vote their shares of the employer's stock. The Court held the discharges were actionable as they were based on violations of public policy furthered by statute.

In *Lockhart, supra*, the Supreme Court of Virginia declared a common law cause of action to exist for termination of at will employment on the basis of race or gender. The Court relied on Va. Code § 2.1-715 for the public policy, but it then stated:

> We recognize that the Virginia Human Rights Act does not create any new causes of action. Code § 2.1-725. Here, we do not rely upon the Virginia Human Rights Act to create new causes of action. Rather, we rely solely on the narrow exception that we recognized in 1985 in *Bowman*, decided two years before the enactment of the Virginia Human Rights Act.

When *Lockhart* was decided, Va. Code § 2.1-725 provided:

> Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination.

In 1995, in response to the *Lockhart* decision, the General Assembly amended Va. Code § 2.1-725. Subsections B and C created a statutory cause of action for the discharge of an employee on several bases, one of which is race. This cause of action may only be brought within a 180 day statute of limitations against employers having more than five and fewer than fifteen employees. Damages are limited in most circumstances to twelve months' back pay with interest; the court may not award any other damages, compensatory or punitive, nor may it order reinstatement. A prevailing plaintiff's attorney's fees may be paid out of, not in addition to, the damages awarded.

Subsections A and D provide in pertinent part:

> A. Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions, except as specifically provided in subsections B and C of this section.

D. Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.

In *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (1996), the Court required a plaintiff bringing a common law wrongful discharge action to identify specific Virginia statutes establishing public policies that the employers had violated. The Court reiterated that the policy violated in *Lockhart* was found in Va. Code § 2.1-715. 251 Va. at 98-99, 465 S.E.2d at 809. The plaintiff in *Lawrence Chrysler Plymouth Corp.* was discharged in 1992.

In *Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121 (1997), the plaintiff alleged she was fired in 1994 because of pregnancy, and she filed a wrongful discharge action under *Lockhart*. The Circuit Court sustained the defendant's demurrer [37 Va. Cir. 438 (1995)], and the Supreme Court reversed, holding that she did state a common law cause of action for wrongful discharge. The Court again stated that Va. Code § 2.1-715 reflected the public policy violated in *Lockhart*, and it further held:

Additionally, we noted in *Lockhart* that while the cause of action for wrongful termination based on gender discrimination arose independently from the Virginia Human Rights Act, the public policy articulation in that Act satisfies our requirement in *Lawrence Chrysler Plymouth Corp.* for identifying a statutory embodiment of the public policy of the Commonwealth. (*Id.* at p. 127.)

The plaintiff here argues that her claim is a common law *Bowman* action, that, like *Lockhart*, arises independently of the Act; that the Supreme Court held former Va. Code § 2.1-725 did not bar such a claim; and that the 1995 amendment to the Act does not limit a *Lockhart* action because such an action arises independently of the Act. In short, the 1995 amendment to the Act should have no more effect on the right to bring a common law wrongful discharge action than the 1987 version of the Act had. She further argues that even though the General Assembly intended to limit *Lockhart* by the 1995 amendment to the Act, the only way the General Assembly could do so would be the repeal of the Act.

*Bowman* and *Lockhart* are common law causes of action. The General Assembly has the authority to modify the common law, but statutes doing so must be strictly construed.

There are two possible constructions of the 1995 amendment to the Act. First, the General Assembly intended to abrogate *Lockhart* and to replace it with a far more limited statutory cause of action. Second, the General Assembly intended to create a new statutory cause of action in addition to the common law action under *Lockhart*. It is difficult to believe the latter construction was intended. The *Lockhart* action is available regardless of the number of employees; the damages are not limited to twelve months' back pay, but compensatory and, when warranted, punitive damages are allowed; and the limitations period is longer. Why would any plaintiff elect the statutory cause of action if a *Lockhart* claim is available? Furthermore, the second construction would nullify Va. Code § 2.1-725(D) and the last clause of subsection (A). It is a fundamental principle of statutory construction that courts will construe a statute to give it effect and not to render it vain. *McFadden v. McNorton*, 193 Va. 455, 69 S.E.2d 445 (1952).

In *Lawrence Chrysler Plymouth Corp.* and *Bailey*, the Court held that even though *Lockhart* was a common law action, the statutory public policy on which it rested was found in the Act. Va. Code § 2.1-725(D) states that "causes of action based upon the public policies" of the Act are "exclusively limited" to statutory actions. The General Assembly's intent to abrogate *Lockhart* could not be clearer. Although it was dictum, the dissenters in *Bailey* reached the same conclusion. "In 1995, the General Assembly acted promptly to nullify the scope of *Lockhart*." *Bailey, supra* (*Id.*, dissent, at p. 128).

I have considered *Holmes v. Tiedeken*, 36 Va. Cir. 491 (1995); *Lundy v. Cole Vision Corp.*, 39 Va. Cir. 254 (1996); *Molina v. Summer Consultants, Inc.*, Law No. 152715 (Fairfax 1996); and *Ecklund v. Fuisz Technology, Ltd.*, 905 F. Supp. 335 (E.D. Va. 1995). I must respectfully disagree with their holdings. The demurrer to this count will be sustained.

Ms. Blackman will prepare an appropriate order allowing the plaintiff thirty days from its entry to file an amended motion for judgment if she be so advised.