*192 JUSTICE KINSER,
with whom CHIEF JUSTICE CARRICO and JUSTICE COMPTON join, dissenting in part and concurring in part.
I dissent in part from the majority’s decision because I conclude that the employee in this case has not stated a viable cause of action. Thus, I would affirm the circuit court’s judgment sustaining the employer’s demurrer.
The majority states the issue in this case as “whether Code § 2.1-725(D) bars a common law action for wrongful termination based on public policies not reflected in the VHRA, when the conduct alleged in the motion for judgment also violates a public policy reflected in the VHRA.” By accepting Vicki Lynn Mitchem’s purported distinction between being fired because of “sex” discrimination and being fired because she refused to engage in sexual conduct that would have allegedly violated certain criminal laws, the majority concludes that Code § 2.1-725(D) does not bar Mitchem’s claim. To understand why I do not accept this distinction, it is important to first explain why the conduct in which Durwood L. Counts allegedly engaged constitutes “sex” discrimination in violation of a public policy reflected in the Virginia Human Rights Act (VHRA).
Mitchem’s allegations that Counts fired her because she rebuffed his alleged sexual advances and refused to engage in a sexual relationship with him are remarkably similar to the facts alleged by plaintiff Wright in Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 439 S.E.2d 328 (1994). In that case, Wright alleged that her employer “approached her from behind, kissed her cheek” and “ ‘physically seized her, grabbled] her and huggfed] her without her consent.’ ” Id. at 101-02, 439 S.E.2d at 329. She also alleged that her employer repeatedly made abusive, inappropriate, and harassing remarks to her, and ultimately told her to “get out” after she advised her employer that she did not intend to be subjected to that kind of treatment at work. Id. at 102, 439 S.E.2d at 330.
Even though she was an at-will employee, plaintiff Wright alleged that her termination was unlawful, and therefore actionable, because it violated the public policy of Virginia as enunciated in the VHRA. The trial court disagreed and sustained the employer’s demurrer, but this Court reversed that judgment. Id. at 106, 439 S.E.2d at 332. We concluded that Wright had pled a viable cause of action based upon “sex” discrimination. Id. at 104, 439 S.E.2d at 331. While not “retreat[ing] from our strong adherence to the employment-at-will doctrine[,]” the Court held
*193 that the narrow exception to that doctrine, which we recognized in Bowman, includes instances where, as here, [an] employee[] [is] terminated because of discrimination based upon gender .... The discharge[ ] of . . . Ms. Wright [is] allegedly tortious not because [she has] a vested right to continued employment, but because [her] employer[ ] misused the freedom to terminate the services of [an] at-will employee[ ] on the basis of . . . gender.
Id. at 106, 439 S.E.2d at 332.
In reaching its decision in Lockhart, the Court concluded that the nature of the alleged discriminatory conduct of Wright’s employer fell within the scope of the public policy enunciated in the VHRA, “[t]o safeguard all individuals . . . from unlawful discrimination [in employment] because of . . . sex” Code § 2.1-715. In order to hold that Wright had pled a cause of action for wrongful discharge based on the public policy enunciated in the VHRA, we necessarily had to find that the alleged actions of her employer fell within the scope of the phrase “discrimination because of . . . sex” in Code § 2.1-715.[1] Otherwise, Wright could not have utilized the VHRA as the source of public policy upon which to base her common law action for wrongful termination. Since the decision in Lockhart, we have continued to categorize the type of discrimination alleged by Wright as “gender discrimination.” See Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98, 465 S.E.2d 806, 809 (1996); Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 126, 480 S.E.2d 502, 505 (1997).
Accordingly, even though Mitchem disavows any reliance on the VHRA, the sexual harassment that she allegedly endured prior to discharge, as well as Counts’ termination of her employment because she refused to have a sexual relationship with him, if proven true, would violate a public policy reflected in the VHRA. The distinction that Mitchem attempts to make and which the majority accepts, that she was fired, not because of “sex,” but because she refused to engage in conduct that would have violated certain criminal statutes, merely places a different label on “sex” discrimination and thus exalts form over substance. The re-labeling of her claim does nothing *194 to alter the facts alleged by Mitchem or the law governing those allegations. Thus, I do not accept that proffered distinction.[2]
Nevertheless, Mitchem insists that Counts discharged her because she refused to commit the crimes of fornication, and lewd and lascivious cohabitation, and would not consent to the commission of a battery upon her person.[3] Thus, according to Mitchem, her termination violated the public policies contained in the criminal statutes making these acts unlawful, and the public policy that an employer cannot fire an employee for refusing to commit a crime. I need not, as the majority does, decide whether those criminal statutes sufficiently enunciate public policies to support a Bowman-type cause of action by an at-will employee for unlawful termination because, even if they do, I conclude that Mitchem nonetheless is barred from maintaining her action against Counts.[4]
After this Court’s decision in Lockhart, the General Assembly amended the VHRA. One of the changes was the addition of subsection D to Code § 2.1-725, which prohibits a common law cause of action based upon the public policies reflected in the VHRA. Doss v. Jamco, Inc., 254 Va. 362, 372, 492 S.E.2d 441, 447 (1997).
In Conner v. National Pest Control, Ass’n, 257 Va. 286, 513 S.E.2d 398 (1999), we expanded upon the impact of subsection D, stating that “the General Assembly, in enacting the 1995 amendments to the VHRA, eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere.” Id. at 290, 513 S.E.2d at 400. Thus, after Conner, an at-will employee in Virginia cannot maintain a cause of action based on the public policy exception to the at-will employment doctrine if the public policy is one that is “reflected” in the VHRA, even when the *195 employee does not rely on or cite the VHRA because the policy is found in other statutes.
Even if the majority is correct in concluding that Virginia’s public policy protects an at-will employee from being terminated as a result of refusing to violate the Commonwealth’s criminal laws, the facts alleged in this case, if proven, would contravene not only that public policy, but also the public policy of safeguarding individuals from sex discrimination in employment, as reflected in the VHRA. Thus, I believe that Mitchem cannot maintain this cause of action. See Conner, 257 Va. at 290, 513 S.E.2d at 400.
I recognize that the present case is slightly different from Conner to the extent that, in support of her claim that she was discharged in contravention of a public policy, Mitchem cites a policy not contained in the VHRA, specifically her right to refuse to commit a crime. Conner, on the other hand, asserted that her discharge from employment violated the public policy against discrimination based on gender, which is a policy reflected in the VHRA, but she cited statutes other than the VHRA as the source of that public policy. Id. at 288, 513 S.E.2d at 399. I believe that this is another distinction without a difference, and that this Court’s decision in Conner is controlling because, as I have already noted, Counts’ alleged conduct, if proven, would violate the public policies reflected in the VHRA. Thus, I conclude that Mitchem’s “[c]ause[] of action [is one] based upon the public policies reflected in [the VHRA],” Code § 2.1-725(D), despite her attempt to place a different label on it.
By permitting her cause of action to proceed, the majority creates an avenue through which virtually all employees asserting allegations similar to Mitchem’s can bypass the General Assembly’s clear intent, as expressed in Code § 2.1-725(D), to “abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public policies reflected in the [VHRA].” Doss, 254 Va. at 372, 492 S.E.2d at 447. The General Assembly’s purpose in enacting subsection D was to bar claims such as the one brought by Wright in Lockhart, yet the majority today ignores that clear intent by allowing allegations similar to those alleged by Wright to go forward despite the language of Code § 2.1-725(D).
Contrary to the majority’s argument that Counts’ position would bar a common law wrongful termination action by an employee discharged for refusing to engage in intimidatory conduct such as burning a cross on the lawn of an African-American, or painting a swastika on a synagogue, those causes of action would not be barred by *196 Code § 2.1-725(D). In the examples utilized by the majority, the discharges would not be in violation of the policies reflected in the VHRA because the employer’s act of discrimination based on race or religion would not be directed toward the employee, but instead would be directed toward a third party. The public policies reflected in the VHRA are intended to prohibit discrimination in, inter alia, employment, on the basis of die employee’s “race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability.” Code § 2.1-715. Those public policies protect an employee, not a third party, from being the subject or object of a discriminatory act. In the majority’s hypotheticals, the employee would not be the object of the discrimination but would be the person who refuses to engage in the discriminatory conduct. In other words, Code § 2.1-725(D) abrogates causes of action based on policies reflected in the VHRA, but before those policies are implicated, the person against whom discriminatory conduct is directed must be a member of the class of persons protected by those policies. Dray v. New Market Poultry Prod., Inc., 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999). See also Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998), cert. denied sub nom. Brown v. Mayor and City Council of Baltimore, 526 U.S. 1099, 119 S.Ct. 1577 (1999) (under Title VII, proof that plaintiff is a member of a protected group is required to establish a prima facie case); Childress v. City of Richmond, 134 F.3d 1205, 1209 (4th Cir.) (Luttig, J., concurring), cert. denied, 524 U.S. 927 (1998) (“in order to qualify as a ‘person aggrieved’ . . . [under Title VII], a plaintiff must be a member of the class of direct victims of conduct prohibited . . . and allege that he, not someone else, has been ‘discriminated against.’ ”) (Emphasis added); Drake v. Minnesota Mining & Manuf. Co., 134 F.3d 878, 884 (7th Cir. 1998) (in a Title VII associational discrimination case, “the key inquiries should be whether the employee has been discriminated against and whether that discrimination was ‘because of’ the employee’s race.”) (Emphasis added); Code § 2.1-725(B) (the plaintiff’s age, not that of any other person, makes age discrimination contrary to the Commonwealth’s public policy).[5] Thus, under my view, employees terminated because they rightly refused to partici *197 pate in such illegal and improper actions would not be barred by Code § 2.1-725(D) from pursuing common law wrongful termination claims.
CONCLUSION
My dissent may be viewed by some as sanctioning “sex” discrimination in the workplace. In order to dispel any such misconception, I reiterate the thoughts expressed in the concurring opinion in Conner.
Gender discrimination should not be countenanced in any manner and victims of such discrimination should be accorded a tort remedy that fully and fairly compensates them for injuries caused by an employer’s repugnant conduct.
However, the General Assembly of this Commonwealth has chosen to impose limitations on the right of a[n employee] to recover damages against an employer who discriminates . . . because of [the employee’s] gender. . . . And, this Court, which does not, and constitutionally cannot, act as a super-legislative body, is required to apply these restrictions as expressed by the General Assembly.
Conner, 257 Va. at 290-91, 513 S.E.2d at 400 (Hassell, J., concurring).
Unlike the majority, I continue to believe that the proper role of this Court is to interpret the law as enacted by the General Assembly, and not to function as a “super-legislative body.”
For these reasons, I respectfully dissent in part and concur in part.

 None of the other types of discrimination included in Code § 2.1-715 was implicated by the facts plaintiff Wright alleged.

 Likewise, I do not believe that Mitchem stated alternative theories of recovery just because she alleged that her termination violated several public policies.

 I concur in the result the majority reaches with respect to Mitchem’s reliance on Code § 18.2-57 proscribing assault and battery, but reach that conclusion for the reasons stated in this dissent.

 The majority’s statement that the public policies behind the prohibitions against fornication, a class 4 misdemeanor punishable by a maximum $250 fine, and lewd and lascivious cohabitation, a class 3 misdemeanor punishable by a maximum $500 fine, are “equally, if not more compelling than the public policy in Bowman,” which supported a stockholder’s right to vote free of duress and intimidation by corporate management, does not support the majority’s conclusion that these criminal statutes have a sufficient public policy underlying them to support a Bowman-type cause of action.

 “Associational discrimination cases,” where, for example, a Caucasian claims he or she was discriminated against due to his or her relationship with an African-American, are permitted, Drake, 134 F.3d at 884; Fiedler v. Marumsco Christian School, 631 F.2d 1144, 1149-50 (4th Cir. 1980), but the hypotheticals presented by the majority do not fulfill the criteria for such an action.