Present: All the Justices

LINDA ROWAN

v. Record No. 011732    OPINION BY JUSTICE ELIZABETH B. LACY
                                    March 1, 2002
TRACTOR SUPPLY COMPANY

UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

Pursuant to the provisions of Rule 5:42, the United States District Court for the Western District of Virginia entered a certification order requesting that we exercise our certification jurisdiction and answer the following question:

> Does a complaint state a Bowman claim under § 18.2-460 when the plaintiff, an at-will employee, alleges that her employer terminated her employment because she refused to yield to employer's demand that she discontinue pursuing criminal charges of assault and battery against a fellow employee?

The district court concluded that the issue presented by this question was a matter of first impression under Virginia law and that resolution of the issue was dispositive of the matter before the district court. We accepted the certification by order entered September 6, 2001. For the reasons stated below, we will answer the certified question in the negative.

I. FACTS AND PROCEEDINGS

The facts as stated in the certification order are as follows.[1] Linda Rowan (Rowan) was employed as an

_____

[1] Because the matter was considered by the district court on a Motion for Judgment on the Pleadings under Federal Rule

administrative cashier for Tractor Supply Company (TSC) from May 10, 1999 to February 16, 2000. During the course of her employment, Rowan discovered information that led her to believe that her manager, Jerry Michael Snider, and other employees, were embezzling money and property from TSC. When Rowan expressed her concerns to Snider about this activity, "he reacted violently by twisting her arm and pushing her forcefully against the desk."

The next day, September 8, 1999, Rowan reported this incident to Rodney Carter, Snider's supervisor and area manager. Carter did not express concern for Rowan, and "appeared more interested in keeping news of the incident from spreading." Rowan met with another employee of TSC who told her to "keep her mouth shut" and that Rowan would "'suffer the consequences'" if she engaged in further action regarding the matter.

Rowan filed a civil action against Snider in the General District Court of Montgomery County. Rowan was awarded $1,500 in damages plus interest and costs by order entered January 19, 2000. No appeal was taken from this judgment.

Rowan reported the attack to the police on September 11, 1999 and charges were filed against Snider.

12(c), the district court accepted as true the factual allegations in the plaintiff's pleadings and presented the

Following the conclusion of the civil suit, Mike Jones, the new manager of TSC's Christiansburg store, told Rowan that TSC wanted her to drop the charges against Snider and that TSC would not "black-ball" her any further if she did. Jones also indicated that Carter wanted the charges dropped and that he was a dangerous and powerful person who could "hurt her." Despite these admonitions, Rowan did not drop her charges against Snider. TSC terminated Rowan's employment on February 16, 2000.

Rowan served as the primary witness against Snider at his criminal trial, where he was convicted of criminal assault and battery on March 7, 2000.

On May 12, 2000, Rowan filed this action in the Circuit Court of the City of Roanoke against TSC claiming that she was wrongfully terminated in violation of Virginia public policy.[2] TSC removed the case to federal court pursuant to 28 U.S.C. § 1441. After discovery, TSC filed a Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c). In response, Rowan filed a Motion to Certify a Question of Law.

In a memorandum opinion dated June 6, 2001, the district court concluded that Rowan's pleadings did not state a

facts in that light.

[2] Rowan filed a two-count Complaint, alleging wrongful termination in violation of public policy and retaliatory

wrongful termination claim based on either Code § 18.2-456.1 (employer may not take action against employee for missing work because of court appearance pursuant to subpoena or summons), or Code § 19.2-11.01(A)(3) (employer should minimize crime-victim-employee's loss of benefits or pay resulting from court proceedings) because she was terminated before her appearance in the criminal trial and thus not penalized for complying with a court obligation.  The district court also held that Rowan did not state a cause of action based on Code §§ 19.2-267 and -456 (offense to disobey witness summons in criminal case) because she did not allege that TSC attempted to coerce her to disobey a lawful subpoena.

The district court, however, could not determine whether, based on current Virginia law, Rowan would be entitled to maintain a cause of action for wrongful termination based on the public policy embodied in Code § 18.2-460, the obstruction of justice statute.  Accordingly, the district court denied TSC's Motion for Judgment on the Pleadings and granted Rowan's Motion to Certify.[3]

## II.  DISCUSSION

firing for bringing a workers' compensation claim.  A Consent Decree was issued March 9, 2001 dismissing the second claim.

[3] The district court also granted Rowan's motion to file an amended complaint; however, we restrict our consideration to the facts and issue presented in the certification order and thus the amended complaint is not before us.

The phrase "Bowman claim" stems from this Court's decision in Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985), in which we first recognized an exception to the doctrine of employment-at-will based on an employer's violation of public policy in the discharge of an employee. In Bowman, several employees were discharged because they refused to vote shares of stock in the manner directed by the employer. Former Code § 13.1-32 (currently codified in Code § 13.1-662) gave shareholders the right to vote their shares. To fully realize the public policy underlying the shareholders' statutory right, shareholders had to be allowed to vote such shares free from duress or intimidation. Thus, we concluded that the employer's actions in discharging the employees violated the public policy that shareholders are entitled to vote their shares free of duress or intimidation reflected in the right conferred on the shareholder/employee by the statute. Id. at 540, 331 S.E.2d at 801.

Since Bowman, we have considered a number of cases in which this public policy exception to the employment-at-will doctrine has been asserted. While virtually every statute expresses a public policy of some sort, we continue to consider this exception to be a "narrow" exception and to hold that "termination of an employee in violation of the policy

underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." City of Virginia Beach v. Harris, 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000). In only three circumstances have we concluded that the claims were sufficient to constitute a common law action for wrongful discharge under the public policy exception.

We have just discussed the first instance in which we recognized a common law action for wrongful discharge: an employer violated a policy enabling the exercise of an employee's statutorily created right. Bowman v. State Bank of Keysville. We have also allowed such an action to proceed when the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy. Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 480 S.E.2d 502 (1997), and Lockhart v. Commonwealth Education Systems Corporation, 247 Va. 98, 439 S.E.2d 328 (1994), involved discharges based on the public policy expressly stated in former Code § 2.1-715.[4] (Currently codified in Code § 2.2-3900). That statute provided in relevant part that it is "the policy of the Commonwealth" to

"safeguard all individuals within this Commonwealth" against unlawful discrimination in employment based on gender. The employees in these cases alleged they were discharged based on their gender.

Finally, we have recognized a cause of action for wrongful discharge where the discharge was based on the employee's refusal to engage in a criminal act. Although criminal statutes do not contain explicit statements of public policy, the protection of the general public from lawless acts is an unquestioned policy underlying such statutes. We recognized that allowing the employment-at-will doctrine to "serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity" would violate this most compelling public policy. Mitchem v. Counts, 259 Va. 179, 190, 523 S.E.2d 246, 252 (2000).

In this case, the common law action is not based on a public policy expressly set out in the statute as it was in Lockhart. Nor does Rowan claim that she is entitled to maintain her common law action because she was terminated for refusal to engage in a criminal act as did the employee in Mitchem. Rowan asserts that Code § 18.2-460 is " 'consistent

---

[4] In 1995, the General Assembly amended Code § 2.2-2639 which limited the remedies available to an employee alleging

7

with the policy of the Commonwealth to protect the public from criminals by shielding those who participate in the prosecution and trial of suspected wrongdoers.' "  As a person involved in a criminal prosecution, Rowan argues that, to effectuate the public policy she posits, the statute must provide her with a right to such protection and the violation of such right by her employer is a violation of public policy sufficient to support her common law cause of action.  We disagree with Rowan.

The premise of Rowan's position is that by virtue of Code § 18.2-460, she is vested with a right to be free from intimidation with regard to her pressing criminal charges and participating in the legal processes connected to those charges.  However, unlike the shareholders' right to vote shares granted by the statute in Bowman, Code § 18.2-460 does not grant a person involved in a criminal prosecution any specific right.  Also, in Bowman the public policy violated existed to protect the exercise of the statutory right, but here there is no statutory right and, therefore, there exists no corresponding public policy necessary to protect the right.

Further, Rowan's description of the public policy that does underlie Code § 18.2-460 is inconsistent with our prior case law.  We have previously described the public policy

unlawful discharge in violation of this policy.

8

underlying the obstruction of justice statute as reflecting "the General Assembly's intent to prohibit interference with the administration of justice" and as protecting "the public's safety and welfare."  Harris, 259 Va. at 233, 523 S.E.2d at 246.  The goal of this policy is not to protect individuals from intimidation, but to protect the public from a flawed legal system due to impaired prosecution of criminals.  Thus, TSC's actions in discharging Rowan did not violate a right granted to her but rather violated a criminal statute enacted to ensure that the administration of justice is not subverted.

In summary, Code § 18.2-460 did not create any statutory right or a corresponding public policy of the type that would support an exception to the employment-at-will doctrine and thus allow a common law action for wrongful termination.[5]

Accordingly, the certified question is answered in the negative.

Certified question answered in the negative.

---

[5] The certified question was limited to consideration of Code § 18.2-460 and thus we do not address Rowan's arguments that other statutes support the public policy at issue and recognize certain rights of crime victims and persons involved in criminal prosecution.