# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Rubin

   v.

American Society
of Travel Agents, Inc.

March 4, 2008

Case No. CL07003551

BY JUDGE LISA B. KEMLER

This matter comes before the Court on the defendant's demurrer to the complaint in this wrongful termination suit. After oral argument on February 27, 2008, the Court took under advisement two questions of first impression raised by that demurrer. Do the narrow exceptions to the at-will employment doctrine articulated by the Virginia Supreme Court in *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213-14, 559 S.E.2d 709 (2002), permit a wrongful termination claim by an attorney employee discharged for his refusal to engage in conduct prohibited by the Unauthorized Practice Rules of the Supreme Court of Virginia? And, does the common law at-will doctrine include a cause of action against an employer for failure to give reasonable notice of an employee's termination? For the following reasons, I resolve both of those questions in favor of the employer-defendant.

For the purpose of answering the two questions presented, I accept the following allegations in the complaint as true. From July 1985 to November 6, 2006, the plaintiff was employed by the defendant to perform legal services. In 2006, the defendant directed the plaintiff to perform a trademark search to determine the availability of a designation that one of the defendant's

members hoped to use in her individual business. The plaintiff refused. He informed the defendant that conducting the requested work would constitute legal advice to the individual member in contravention of Virginia law, specifically Supreme Court Rule of Unauthorized Practice 8-101 and Virginia Code § 54.01-3904. Nonetheless, the defendant repeatedly pressured him to conduct the search, becoming "increasingly hostile" over time. Finally, following difficulties finding a flight to London for a November meeting the plaintiff was to attend, the defendant fired the plaintiff without notice.

The parties agree that their employment relationship was at-will. Virginia has long adhered to the common law doctrine of at-will employment. *Lockhart v. Commonwealth Educ. Sys.*, 247 Va. 98, 102, 439 S.E.2d 328, 330 (1994). Pursuant to that doctrine, a contract for employment is terminable at any time for any reason or no reason at all. *Id.* The doctrine is not absolute, however. *Id.* In 1985, the Virginia Supreme Court carved out a narrow exception: an at-will employee may nonetheless bring a tortious wrongful discharge claim, a *Bowman* claim, if the termination violates Virginia public policy as expressed in a state statute. *Bowman v. State Bank of Keysville*, 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985). But termination of an employee in violation of the policy underlying a statute does not *automatically* give rise to a common law cause of action for wrongful discharge. *Rowan v. Tractor Supply Co.*, 263 Va. 209, 209, 559 S.E.2d 709, 711 (2002). That is because, mindful of the fact that *all* statutes enacted by the General Assembly reflect some underlying policy — and, therefore, any statute could theoretically form the basis for a *Bowman* claim — the *Bowman* court limited its holding to public policies underlying existing laws "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 467-68, 362 S.E.2d 915, 918 (1987). Since then, the Court has recognized only three categories of *Bowman* claims: (a) discharge that violates a policy enabling the exercise of an employee's statutorily created right, *Bowman*, 229 Va. at 539, 331 S.E.2d at 801; (b) termination of an employee who was clearly a member of the class of persons directly entitled to the protection enunciated by the public policy, *Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121, 480 S.E.2d 502 (1997); and (c) discharge based on the employee's refusal to engage in a criminal act, *Mitchem v. Counts*, 259 Va. 179, 190, 523 S.E.2d 246, 252 (2000). *Rowan*, 263 Va. at 213-14, 559 S.E.2d at 710-11.

Thus, to survive a demurrer, the plaintiff's complaint must state a claim that falls within one of those three narrow exceptions. For the following reasons, I find that it does not. At the outset, the statute relied upon by the plaintiff, Virginia Code § 54.01-3904, does not create an enforceable statutory

right. Instead, the unambiguous language of the statute, "[a]ny person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor," merely prescribes a penalty for practicing law without being authorized or licensed. Va. Code § 54.01-3904. Contrast that provision to the statute in *Bowman* itself, former Virginia Code § 13.1-32 (now codified at Virginia Code § 13.1-662), which gave shareholders a statutory right to vote their shares free of duress and intimidation by corporate management: "each outstanding share, regardless of class, is *entitled* to one vote on each matter voted on at a shareholders' meeting." Va. Code § 13.1-662 (emphasis added). Denial of that right by the employer in *Bowman* violated the corresponding public policy necessary to protect the individual right.

Although I have no question that § 54.01-3904 reflects an underlying policy, the need to protect the integrity of the legal profession and to protect the *public* at large by insuring only those who have met rigorous standards may provide legal representation, the policy does not protect any corresponding right held by a licensed Virginia attorney. *See* Rules of Sup. Ct. of Va., Pt. 6, § 1 (Intro.) (2006) ("The public is best served in legal matters by lawyers . . . who [are] not motivated or influenced by any allegiance other than to the client and our system of justice."). Nor are attorneys clearly included in the class of persons directly entitled to the protection of any policy expressed by the statute; any such class would include the lay members of the general public who would be harmed by the unlicensed practice of law. Thus, for the foregoing reasons, I sustain the defendant's demurrer with regard to the first and second *Bowman* exceptions.

With regard to the third and final exception, discharge for refusal to perform a criminal act, the defendant argues the plaintiff cannot successfully rely on Virginia Code § 54.1-3904 because the statute does not apply to him. According to the defendant, § 54.1-3904 only addresses penalties to be imposed on non-lawyers (for example, law students) or unlicensed lawyers (for example, foreign attorneys) who purport to practice law, and the plaintiff is and was at all times a licensed member of the bar in good standing. The plaintiff counters that the statute does apply, but that even if it does not, it is a close enough question that his claims should survive demurrer. The latter argument is without merit. The issue whether the statute applies or not based upon the plaintiff's status as a licensed attorney is a pure question of law that can be decided by this Court now; the specific facts of this case are immaterial to that determination, and there is no reason to hold a trial if the plaintiff will not be entitled to relief if his allegations are proven.

The plaintiff's argument that § 54.01-3904 does apply to him, despite his status as a licensed attorney, is stronger, but it too is ultimately unpersuasive. As noted above, the statute provides that "[a]ny person who

practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor." Va. Code § 54.01-3904. By its own terms, the statute applies to any individual who purports to practice law without first obtaining permission to do so by one of the two procedures available in Virginia: licensure by the Virginia State Bar or authorization by Supreme Court rule or statute. Put differently, the statute focuses on the credentials of would-be lawyers and not the manner in which actual lawyers carry out their everyday work.

The plaintiff, however, suggests an alternative interpretation. He essentially argues that because the defendant asked him to engage in conduct prohibited by the Unauthorized Practice Rules of the Supreme Court of Virginia, the defendant also asked him to engage in the criminal conduct proscribed by § 54.01-3904. Thus, when he was thereafter terminated for refusing the request, he was terminated for refusing to commit a crime.

Although it is not clear that the defendant's request actually would have caused the plaintiff to engage in conduct that violated UPR 8-101,[1] the Court does not have to resolve that question now because the plaintiff's statutory argument creates an untenable interpretation of § 54.01-3904. That is because his reading of the statute has the potential to turn every ethics case into a criminal matter. On his view, duly licensed attorneys who take acts "unauthorized" under the rules of professional conduct (say by failing to inform a client of a conflict of interest) would be engaged in criminal, not merely unethical, conduct. That reading would turn on its head the well-settled principle that it is the province of the courts, and not the General Assembly, to regulate and punish ethical misconduct by lawyers. *See In re Mosley*, 273 Va. 688, 696-99, 643 S.E.2d 190, 195-95 (2007). For that reason and because the plain language of the statute is clear, I sustain the demurrer to the complaint with regard to the third *Bowman* exception.

The defendant's demurrer to Count II, breach of at-will employment contract, presents a question of first impression in this Court and in the appellate courts. Does the common law employment at-will doctrine create a substantive right or an independent action for failure to give reasonable notice prior to termination? The defendant's argument that it does not is two-fold. First, there currently is no recognized cause of action for failure to give reasonable notice; there is no statutory or appellate authority

---

[1] UPR 8-101 prohibits a trade association from providing its individual members with the services of a lawyer who is subject to the trade association's direction or control. Doing so constitutes the practice of law by a non-lawyer (the association) without authorization.

compelling such a result. Second, the proposed exception to the at-will doctrine for failure to give reasonable notice would, in effect, eviscerate the doctrine in its entirety.

The oft-cited genesis of the reasonable notice requirement is a 1906 Virginia Supreme Court case, *Stonega Coke & Coal Co. v. Louisville & Nashville RR.*, 106 Va. 223, 226, 55 S.E. 551, 552 (1906):

> When a contract calls for the rendition of services, if it is so far incomplete as that the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate it at will *on giving reasonable notice of his intention to do so*.

Although the Court has consistently included the term "reasonable notice" in employment at-will cases since *Stonega*, the Court has never defined that term nor addressed whether that language creates a reasonable notice exception to the at-will doctrine in the form of an independent cause of action for damages. The circuit courts (and at least one federal district court) that *have* directly addressed the question are split.

In a 1996 opinion, the Chesapeake Circuit Court held that the above language "defin[es] an implied obligation requiring each party to an employment agreement to give the other reasonable notice of termination unless there is an agreement or understanding to the contrary." Because of that implied obligation, the court concluded that the failure to provide notice is actionable as a breach of an implied contract. *Laudenslager v. Loral*, 39 Va. Cir. 228, 229 (1996); *see also Wells v. G.R. Associates, Inc.*, 2000 WL 33199263 (E.D. Va. 2000) (assuming but not deciding that there is a reasonable notice exception to the at-will employment doctrine).

Other trial courts, however, have soundly rejected that conclusion, relying on a federal district court case, *Perry v. American Home Products Corp.*, 1997 U.S. Dist. LEXIS 2521 (1997). In *Perry*, the court specifically rejected *Laudenslager's* suggestion that *Stonega* and its progeny create a right of action. Such a claim, *Perry* reasoned, could not be reconciled with the at-will employment doctrine:

> No employee-employer relationship in Virginia could truly be "at-will" if an at-will employee has a valid claim, whether for breach of implied contract or in tort, when reasonable notice is not given before termination. The recognition of this new action would permit every discharged employee to sue the employer on

the theory that the employer breached its implied duty to provide reasonable notice. What is reasonable is a question of fact, and, thus, every case filed would have to be decided by the finder of fact. Thereupon, one could declare the demise of the at-will doctrine.

*Id.* at 25. Further, the *Perry* court cautioned that any change "of that ilk" made to the common law at-will doctrine, "a cornerstone of the Commonwealth's employment law," should be made by the General Assembly or the Supreme Court. *Id.* at 26-27. *See also Wilt v. Water and Wastewater Equip. Mfrs. Ass'n, Inc.*, 43 Va. Cir. 118, 122 (1997) (following the reasoning of *Perry*); *Brehm v. Mathis*, 59 Va. Cir. 31, 32-34 (2002) (agreeing with *Perry* and opining that the notice requirement has nothing to do with the time before the termination becomes effective but instead means that the notice of termination must reasonably notify the at-will employee that he is terminated as of a certain date and time so that he does not continue to work without compensation).

I agree with the *Perry* court's reasoning that a reasonable notice action would, at a minimum, turn every wrongful discharge claim into a jury question. But policy arguments aside, the Supreme Court has never *expressly* recognized a substantive right to reasonable notice in this context or an independent cause of action for failure to provide that notice.

I decline to do so in this case.

In fact, in many of the cases with the reasonable notice language, the terminations were in fact terminations *without* notice. *See, e.g., Bowman v. State Bank of Keysville*, 331 S.E.2d at 799 (discharge effective immediately upon notification); *Miller v. SEVAMP, Inc.*, 362 S.E.2d at 916 (same); *Lockhart v. Commonwealth Educ. Systems Corp.*, 439 S.E.2d at 329 (employee discharged, effective immediately, two days after receiving unsatisfactory job performance evaluation).