PRESENT:  All the Justices

NOEMIE S. FRANCIS

v.  Record No. 160267

OPINION BY
JUSTICE S. BERNARD GOODWYN
February 23, 2017

NATIONAL ACCREDITING COMMISSION
OF CAREER ARTS & SCIENCES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

In this appeal, we consider whether the Circuit Court of the City of Alexandria erred in sustaining a demurrer to an amended complaint alleging a claim for wrongful termination under this Court's decision in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985). For the reasons stated below, the Court concludes that the circuit court did not err in sustaining the demurrer.  Thus the judgment dismissing this action with prejudice is affirmed.

BACKGROUND

Because this is an appeal from the circuit court's decision to sustain a demurrer to the amended complaint filed by the appellant, Noemie S. Francis (Francis), the facts are recounted as alleged in that pleading.  *Harris v. Kreutzer*, 271 Va. 188, 195-96, 624 S.E.2d 24, 28 (2006).

On March 27, 2014, the National Accrediting Commission of Career Arts & Sciences, Inc. (NACCAS) hired Francis as a full-time administrative assistant on an at-will basis.  On January 23, 2015, while Francis was at work, Peri Blow (Blow), another NACCAS employee, yelled obscenities at Francis, called her derogatory names, and threatened Francis, saying "I am going to fuck you up, and hurt you."  Approximately "a dozen" NACCAS employees witnessed this event.  Two NACCAS employees, including Shanna Love (Love), tried to pull Blow away from Francis, but Blow "continued to come back to [Francis] with additional threats and vituperations."

Later that day, NACCAS's Executive Director, Anthony Mirando (Mirando), and its Human Resources Director, Alicia Williams (Williams), met with Francis, Blow, and Love to instruct them to observe "NACCAS star core values" and improve their behavior in the future, but NACCAS did not investigate the incident. On January 28, 2015, Williams sent a summary of the meeting to Francis. The summary did not address Blow's actions, "any disciplinary measures against Blow," or any measures to protect Francis. Francis emailed her supervisor and Williams to express "concern" that the summary failed to address her safety and that she was not "comfortable working closely with someone" who threatened "her physical wellbeing."

On January 30, Francis filed an *ex parte* petition for a preliminary protective order (PPO) against Blow in the General District Court of Prince William County. The court granted the PPO on the same date, ordering Blow not to commit any further "acts of violence, force, or threat" against Francis, and prohibiting all contact except "lawful conduct" with Francis.

On Thursday, February 5, 2015, a police officer served the PPO on Blow at the NACCAS office, in Williams' presence. The following Monday, February 9, Williams informed Francis that she was terminated effective immediately because Francis "did not fit the vision of the organization."

On June 11, 2015, Francis filed suit against NACCAS in the Circuit Court of the City of Alexandria alleging wrongful discharge in violation of public policy under *Bowman*. The court sustained NACCAS's demurrer which alleged "there are no sufficient allegations of a true public policy violation."

Francis filed an amended complaint on August 25, 2016. The amended complaint set forth the alleged facts recounted above, and asserted a claim for wrongful termination under *Bowman*, based upon the allegations that NACCAS wrongfully discharged her in violation of the

2

public policy embodied in Code §§ 19.2-152.7:1 through 19.2-152.10 (the Protective Order Statutes). She asserted that the public policy of the Protective Order Statutes "grants individuals the right to seek a civil protective order 'to protect the health and safety of the petitioner.'" Francis alleged that her "exercise of her statutory rights in obtaining a civil protective order . . . was at minimum a motivating factor for her employment termination."

On September 9, 2015, NACCAS filed an amended demurrer, arguing that the amended complaint "fails to state any valid claim for wrongful discharge in violation of public policy, as [Francis] was an at-will employee and she does not identify any statutorily protected right that NACCAS violated by her termination."

On December 9, 2015, the court sustained the amended demurrer with prejudice. Francis appeals.

## ANALYSIS

"A trial court's decision sustaining a demurrer presents a question of law which we review de novo. Furthermore, like the trial court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." *Harris*, 271 Va. at 196, 624 S.E.2d at 28 (citation omitted). "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [complaint], but only may determine whether the factual allegations of the [complaint] are sufficient to state a cause of action." *Id.* at 195, 624 S.E.2d at 28. A demurrer is properly sustained when the pleading to which it is directed fails to allege facts sufficient to state a cause of action. *Brown v. Jacobs*, 289 Va. 209, 215-19, 768 S.E.2d 421, 425-27 (2015).

Virginia adheres to the employment at-will doctrine, which allows that "[a]n employee remains at liberty to leave his employment for any reason or for no reason," and "[b]y the same

3

token, the employer is free to terminate the employment relationship without the need to articulate a reason." *Johnston v. William E. Wood & Assocs.*, 292 Va. 222, 225-26, 787 S.E.2d 103, 105 (2016) (citation and internal quotation marks omitted).

In *Bowman*, this Court first recognized an exception to the employment at-will doctrine based upon an employer's violation of public policy in the discharge of an employee. In subsequent cases dealing with *Bowman*-type exceptions to the employment at-will doctrine, this Court has consistently characterized such exceptions as "narrow." *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 97-98, 465 S.E.2d 806, 808-09 (1996); *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 104, 439 S.E.2d 328, 331 (1994); *Bowman*, 229 Va. at 540, 331 S.E.2d at 801. We have noted that "[w]hile virtually every statute expresses a public policy of some sort, we continue . . . to hold that termination of an employee in violation of the policy underlying any one statute does not automatically give rise to a common law cause of action for wrongful discharge." *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213, 559 S.E.2d 709, 711 (2002) (internal citation and internal quotation marks omitted); *see also City of Virginia Beach v. Harris*, 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000).

In fact, in only three circumstances or "scenarios" has this Court concluded that a claim was sufficient to constitute a common law cause of action for wrongful termination of an at-will employee under the *Bowman* public policy exception:

(1) When "an employer violated a policy enabling the exercise of an employee's statutorily created right" (hereinafter Scenario 1). *See Bowman*;

(2) When "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy" (hereinafter Scenario 2). *See Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121, 480 S.E.2d 502 (1997); *Lockhart*, 247 Va. 98, 439 S.E.2d 328; and

4

(3) When "the discharge was based on the employee's refusal to engage in a criminal act." (hereinafter Scenario 3). *See Mitchem v. Counts*, 259 Va. 179, 190, 523 S.E.2d 246, 252 (2000).

*Rowan*, 263 Va. at 213-14, 559 S.E.2d at 711. Francis contends that the first two scenarios are relevant here.[*]

Francis asserts that her amended complaint states a *Bowman* Scenario 1 cause of action because she pleaded that she "exercised her statutorily created right to obtain a court protective order to protect her health and safety, which is a right existing pursuant to [the Protective Order Statutes]," the stated public policy for such an order is "to protect the health and safety of the petitioner . . . from an act of violence, force or threat . . . that may result in injury to person or property," and she was terminated due to her exercise of this statutory right. However, in order to successfully state a claim for wrongful discharge under *Bowman* Scenario 1, it must be shown that the employer's termination violated public policy. *Id.* at 213-14, 559 S.E.2d at 711. To analyze such a claim, it is important to discern what right was conferred on an employee by statute, and then whether the employer's termination of employment violated the public policy underlying that right.

For example, in *Bowman*, two employee-shareholders were fired after they ultimately failed to vote their shares in support of a proposed merger. *Bowman*, 229 Va. at 537-38, 331 S.E.2d at 799-800. This Court held "that the plaintiffs have stated a cause of action in tort against [their employer] for improper discharge from employment," because

> the retaliatory discharges were based on violations of public policy by the defendants. Code § 13.1-32 conferred on these plaintiffs as stockholders the right to one vote, for each outstanding share of stock held, on each corporate matter submitted to a vote at a meeting of stockholders. This statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management. *In order for the goal of the statute to be realized and the public policy fulfilled, the*

---

[*] Francis does not assert any claim under Scenario 3, so we do not analyze it here.

5

*shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer.* Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

*Id*. at 540, 331 S.E.2d at 801 (emphasis added).

As this Court later explained regarding *Bowman*, "We held the discharge to be tortious, not because the employees had a vested right to continued employment, but because the employer had misused its freedom to terminate the services of at-will employees in order to subvert a right guaranteed to stockholders by statute." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 467, 362 S.E.2d 915, 918 (1987).

The Protective Order Statutes grant an individual the right to seek a protective order. The Protective Order Statutes clearly state a public policy "to protect the health and safety of the petitioner or any family or household member of the petitioner." Code § 19.2-152.9(A). Thus, a viable *Bowman* claim in this context would require a showing that the termination of employment *itself* violated the stated public policy of protection of health and safety. Here, it does not.

Francis does not allege that her termination itself violated the public policy stated in the Protective Order Statutes by somehow endangering her health and safety. Nor does she allege that NACCAS prevented her from exercising her statutory rights under the Protective Order Statutes. Rather, she only alleges that she was terminated because she exercised her rights under the Protective Order Statutes. As this Court has noted previously, *Bowman* does not recognize "a generalized cause of action for the tort of 'retaliatory discharge.'" *Miller*, 234 Va. at 467-68, 362 S.E.2d at 918. Unlike in *Bowman*, where the public policy existed to protect the exercise of the statutory right to vote one's shares, here there exists no corresponding public policy in the

6

Protective Order Statutes protecting the exercise of the right to seek a protective order. There is no public policy violated by the termination of Francis's at-will employment. Accordingly, Francis failed to state a claim under *Bowman* Scenario 1.

Francis also claims that she stated a claim under *Bowman* Scenario 2, which allows an action for wrongful discharge "to proceed when the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy." *Rowan*, 263 Va. at 214, 559 S.E.2d at 711. Francis argues that her amended complaint alleged that a public policy "is explicitly set forth in the [Protective Order Statutes]" to "'protect the health and safety of the petitioner . . . from an act of violence, force or threat,'" and that she is "clearly a member of that class of persons directly entitled to the protection enunciated by the public policy."

As discussed above, the public policy expressly stated in the Protective Order Statutes is to protect the health and safety of a person seeking a protective order. Even assuming, without deciding, that Francis is a member of a protected class of persons entitled to the protections enunciated by that public policy, she has not alleged that NACCAS's action in terminating her violated the public policy to protect her health and safety. Accordingly, she has also failed to state a claim under *Bowman* Scenario 2.

Therefore, because the amended complaint filed by Francis failed to state a claim for wrongful termination under *Bowman*, the circuit court did not err in dismissing it with prejudice. Accordingly, the judgment of the circuit court is affirmed.

*Affirmed*.