COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Bernhard
Argued at Fredericksburg, Virginia

UNPUBLISHED

LEONARD BAUSERMAN

                                                    MEMORANDUM OPINION* BY
v.          Record No. 2215-23-4                    JUDGE MARY GRACE O'BRIEN
                                                    JULY 29, 2025
CITY OF WINCHESTER


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Bruce D. Albertson, Judge

J. Caleb Jones (Simms Showers, LLP, on briefs), for appellant.

John D. McGavin (McGavin, Boyce, Bardot, Thorsen & Katz, PC, on brief), for
appellee.


Former police officer Leonard Bauserman appeals an order sustaining the City of

Winchester's demurrer to his amended complaint alleging wrongful discharge and violation of his

due process rights. Appellant argues that the circuit court erred in finding that he failed to state a

claim that his discharge violated public policy under *Bowman v. State Bank of Keysville*, 229 Va.

534 (1985). He also contends that he stated a viable claim under 42 U.S.C. § 1983 based on

allegations that the City violated his due process rights by withholding exculpatory evidence during

the employment grievance process. Finding no error, we affirm.[1]

## BACKGROUND

"Because this is an appeal from the circuit court's decision to sustain a demurrer to the

amended complaint filed by [appellant], the facts are recounted as alleged in that pleading."

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We deny Bauserman's motion for sanctions.

*Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 169 (2017). "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

Appellant had worked for the City as a police officer for more than 29 years when he was terminated on August 3, 2021. His termination followed an internal affairs investigation into his handling of property related to the death of an individual named Kimberly Alexander. In 1999, Alexander was identified as a person of interest in a break-in and theft from a Wendy's restaurant that she managed. Appellant was among the officers who investigated the case, and an "incident report" was created for "a potential 'larceny from a building.'" Alexander's husband reported her missing around the same time as the larceny.

Alexander's body was later found in West Virginia. The FBI investigated the incident as "a potential interstate case." The investigation yielded no leads, however, and, in 2012, the FBI offered to send the "items recovered from West Virginia" to the Winchester police department. Appellant was working in the department's Administrative Division at the time, and he accepted the items along with the "FBI case files." He organized the FBI case files into an "incident report" and kept the physical items "in the loading bay of the Winchester PD in a locked locker."

In January 2021, appellant was transferred from his role as Commander of the Administrative Division to the Office of the Chief of Police. The new Administrative Division Commander, Wallace Stotlemyer, oversaw a purge of excess department records and found 12 boxes of FBI items in the locker and the incident report from the Wendy's break-in "in a box in the records division." The department initiated an internal affairs investigation of appellant in March 2021 ("IA-21-03") to determine why the "case file and other related documentation" associated with "'a 1999 missing person and likely homicide investigation' were mishandled and not logged as

- 2 -

evidence or placed in the appropriate location for police case files." The IA-21-03 investigation found nine violations of department policy "related to [appellant's] failure to follow 'property and evidence' policies or to properly update a 'case file.'"

On July 2, 2021, appellant received an "Advanced Notice of Discipline" stating that "he was being terminated pursuant to the results of IA-21-03." The notice cited his "failure" to follow department policies regarding the handling of property and evidence in 2012 and 2013. Appellant initiated a grievance proceeding to challenge his termination.

By statute, appellant could choose between the grievance procedure outlined in the Law Enforcement Officers Procedural Guarantee Act ("LEOPGA"), Code §§ 9.1-500 to -507, or the City's local grievance procedure for city employees, adopted pursuant to Code §§ 15.2-1506 and -1507. Code § 9.1-502(B), a provision within the LEOPGA, describes this choice as follows: "A law-enforcement officer may proceed under either the local governing body's grievance procedure or the law-enforcement officer's procedural guarantees, but not both." According to the amended complaint, however, the City "arbitrarily chose" that appellant would proceed under the LEOPGA. Appellant would have preferred the local grievance procedure because the LEOPGA (1) required review by a panel consisting of people "supervised by the individual that [appellant] was accusing of retaliation,"[2] and (2) did not provide for judicial review of procedural violations.

Before the grievance hearing, appellant requested documents from the department that he believed were exculpatory. Specifically, appellant wanted "to review the case file in question to show that it was not a 'missing person' or 'potential homicide investigation.'" Appellant alleged that these documents would show that he could not be guilty of mishandling "evidence" relating to a

---

[2] The LEOPGA requires a grievance panel composed of "one member from within the agency selected by the grievant, one member from within the agency of equal rank of the grievant but no more than two ranks above appointed by the agency head, and a third member from within the agency to be selected by the other two members." Code § 9.1-504(B). Appellant did not assign error to the panel's composition.

"case file." He wanted to prove that, instead, he properly stored the FBI items as an "incident report" in compliance with department policy. The police department did not produce these documents.

Appellant also wanted "to access a disciplinary document showing that a civilian employee was responsible for much of the disarray in the property and evidence room blamed on [appellant]." Again, the police department did not produce the document.

At the conclusion of the grievance hearing, a panel recommended appellant's termination by a two-to-one vote, and Chief of Police John Piper terminated appellant on August 3, 2021, for "mishandling property and evidence related to a 'missing person and potential homicide investigation.'"

Appellant relied on a concurrent set of facts to claim that Piper terminated him in retaliation for using the grievance procedure to challenge another disciplinary action. On April 6, 2021, appellant had been given a written reprimand for unacceptable work performance in his position with the Office of the Chief of Police. Appellant alleged that he "was told this reprimand was not able to be grieved because there was no Employee Improvement Plan attached." On April 13, 2021, appellant was given a "Performance Improvement Plan," which he alleged "concerned substantially similar duties" addressed in the written reprimand. Because he believed he now had a written reprimand with an associated improvement plan, appellant attempted to grieve the written reprimand. The Deputy Chief told appellant he could not pursue the grievance because the situations were "separate and unrelated issues." Appellant challenged this determination in circuit court, which upheld the City's denial of a grievance hearing by a final order entered on September 10, 2021.[3]

---

[3] The record does not reflect any appeal from this September 10, 2021 circuit court decision.

While appellant unsuccessfully pursued that grievance, a local newspaper reported certain details that caused Piper to suspect appellant had leaked the story to the press. Although an internal investigation determined that a reporter had obtained the information from the court on his own, Piper was "angry at the circumstances" and blamed appellant. Further, Piper was "angry at [appellant's] utilization of the grievance procedure to challenge his decisions[] and acted in a retaliatory manner against him because of this fact."

Piper's retaliation consisted of "escalat[ing]" the internal affairs investigation concerning appellant's handling of the Kimberly Alexander files and property from the FBI. At Piper's direction, that investigation (begun in March 2021) "began in earnest" in June 2021 and ultimately "end[ed] in [appellant's] termination" in August 2021.

To support his claim that his termination was retaliatory, and not the result of a legitimate internal affairs investigation, appellant alleged the existence of certain "deficiencies" in the IA-21-03 report that Piper "intentional[ly]" "fail[ed] to notice." These "deficiencies" are the same issues underlying appellant's request for exculpatory materials—specifically, that the report "failed to recognize there was no missing person case file for Kimberly Alexander, because an adult missing person is not a crime" and "failed to recognize there was no homicide investigation, because there was no evidence [to] establish that Kimberly Alexander was killed in Winchester City." In sum, appellant alleged that the report itself was not a legitimate basis for his termination because it "mistook the organized incident report that [he] made for an actual case file." Appellant made these arguments to the panel at the grievance hearing, albeit without access to the documents he requested.

Appellant ultimately sued the City in circuit court, asserting one count of wrongful discharge in violation of public policy under *Bowman* and a second count for violation of due process under 42 U.S.C. § 1983. The wrongful discharge claim asserted that his termination

violated Virginia public policies (1) protecting local government employees from retaliation for use of or participation in the grievance procedure authorized under Code § 15.2-1507, and (2) allowing law enforcement officers to choose whether to proceed under the grievance proceeding rules provided by the LEOPGA or the rules adopted by the locality under Code § 15.2-1507.[4] The 42 U.S.C. § 1983 claim alleged that the City violated appellant's due process rights by withholding exculpatory evidence.

The court sustained the City's demurrer to both counts of the amended complaint and dismissed the case with prejudice.

ANALYSIS

I. Standard of Review

A circuit court's decision to sustain a demurrer presents a question of law that an appellate court reviews de novo. *Francis*, 293 Va. at 171. "[L]ike the [circuit] court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." *Id.* (quoting *Harris v. Kreutzer*, 271 Va. 188, 196 (2006)). We do not "evaluate and decide the merits of the allegations" but instead must "determine whether the factual allegations of the [amended complaint] are sufficient to state a cause of action." *Id.* (quoting *Harris*, 271 Va. at 195). "A demurrer is properly sustained when the pleading . . . fails to allege facts sufficient to state a cause of action." *Id.*; *see also Brown v. Jacobs*, 289 Va. 209, 214 (2015).

Like the circuit court, although we accept as true all properly pleaded facts at the demurrer stage, we are not required to accept any conclusions of law. *See Dodge v. Trs. of Randolph-Macon*

---

[4] Appellant did not assign error to the court's rejection of his third public policy basis for his wrongful discharge claim—namely, that his termination violated a public policy allowing employees access to "all relevant files intended to be used" in a grievance proceeding under Code 15.2-1507. Although appellant has abandoned that basis for wrongful discharge on appeal, he nevertheless persists in challenging the City's withholding of documents through his 42 U.S.C. § 1983 claim asserting a due process violation.

*Woman's Coll.*, 276 Va. 1, 5 (2008) ("[A] demurrer does not admit the correctness of the pleader's conclusions of law." (quoting *Fox v. Custis*, 236 Va. 69, 71 (1988))). Moreover, to the extent this appeal presents questions of statutory interpretation, we review those issues de novo. *Stanton v. Beach*, 79 Va. App. 587, 592 (2024).

## II. *Bowman* Claims

Virginia is an employment at-will state. *See Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (1987). "'[A]n employee remains at liberty to leave his employment for any reason or for no reason,' and '[b]y the same token, the employer is free to terminate the employment relationship without the need to articulate a reason.'" *Francis*, 293 Va. at 171-72 (second alteration in original) (quoting *Johnston v. William E. Wood & Assocs.*, 292 Va. 222, 225 (2016)).

This employment at-will doctrine, however, "is not absolute." *Bowman*, 229 Va. at 539. In *Bowman*, the Supreme Court recognized an exception to the employment at-will doctrine, allowing suit where the termination of an employee violates public policy. *Id.* In subsequent decisions, the Supreme Court "consistently characterized" the public policy exception as "narrow." *Francis*, 293 Va. at 172; *see also City of Virginia Beach v. Harris*, 259 Va. 220, 232 (2000) (collecting cases). Although "virtually every statute expresses a public policy of some sort," not every termination that violates a public policy will "'automatically give rise to a common law cause of action for wrongful discharge.'" *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213 (2002) (quoting *City of Virginia Beach*, 259 Va. at 232). Instead, a *Bowman* claim is viable in only three circumstances:

> (1) When "an employer violated a policy enabling the exercise of an employee's statutorily created right" (hereinafter Scenario 1);
>
> (2) When "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy" (hereinafter Scenario 2); and

(3) When "the discharge was based on the employee's refusal to engage in a criminal act." (hereinafter Scenario 3).

*Francis*, 293 Va. at 172-73 (citations omitted) (quoting *Rowan*, 263 Va. at 213-14).

### A. *Bowman* Claim Alleging Retaliation for Prior Use of Grievance Procedure

Appellant first assigns error to the court's "refus[al] to recognize" a *Bowman* claim for wrongful discharge based on allegations that his termination violated a public policy that employees will not face retaliation for "the use of or participation in the grievance procedure," as described in Code § 15.2-1507. He contends that he was fired in retaliation for exercising a "statutorily created right" to pursue his previous grievance matter and thus stated a viable *Bowman* Scenario 1 claim. *Francis*, 293 Va. at 172.

The source of appellant's public policy argument, Code § 15.2-1507, requires a locality to adopt a grievance procedure with certain "components and features." Code § 15.2-1507(A).[5] The procedure must allow an employee to grieve "acts of retaliation as the result of the use of or participation in the grievance procedure." Code § 15.2-1507(A)(1)(iv). Assuming arguendo this provision expresses a public policy of anti-retaliation, and assuming the City violated this public policy by firing appellant in retaliation for attempting to grieve the prior written reprimand, Virginia law does not permit retaliatory discharge claims based on public policies contained in statutes which themselves provide a remedy for enforcing and vindicating that policy. *See Concerned Taxpayers of Brunswick Cnty. v. County of Brunswick*, 249 Va. 320, 330 (1995) (stating that when "a statute creates a right and provides a remedy . . . , then that remedy is exclusive unless the statute says otherwise" (quoting *Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 360 (1993))); *see also Doss v. Jamco, Inc.*, 254 Va. 362, 372 (1997) (holding that the Virginia Human Rights Act, when

---

[5] Otherwise, localities are "deemed to have adopted a grievance procedure that is consistent with . . . [Code] § 2.2-3000 et seq." Code § 15.2-1507(A).

amended in 1995, no longer supported *Bowman* claims because the General Assembly inserted an exclusive remedy into the statute).[6]

Here, Code § 15.2-1507 provides an extensive remedial scheme for resolving employment-related disputes. "Each grievance procedure shall include not more than four steps for airing complaints at successively higher levels of local government management, and a final step providing for a panel hearing or a hearing before an administrative hearing officer upon the agreement of both parties." Code § 15.2-1507(A)(5). The statute requires localities to adopt a procedure for employees to pursue grievances of the precise sort appellant has alleged—retaliation as a result of using the grievance procedure. Code § 15.2-1507(A)(1)(iv). The very existence of such a remedial scheme disqualifies the underlying policy from supporting a *Bowman* claim. *See Concerned Taxpayers*, 249 Va. at 330.

Moreover, although acts of retaliation are grievable under Code § 15.2-1507(A)(1)(iv), the statute does not create a cause of action for retaliation claims in circuit court. To the contrary, the statute expressly limits the circumstances in which employees may resort to the courts for relief regarding the grievance procedure. *See Alexandria Redev. & Hous. Auth. v. Walker*, 290 Va. 150, 159 (2015) ("Judicial review of the grievance procedure is sharply limited by Code § 15.2-1507.") The statute lists only three issues appealable to circuit court: (1) administrative decisions concerning compliance with procedural requirements; (2) administrative decisions regarding grievability and access to the procedure; and (3) final hearing decisions "that would result in the reinstatement of

---

[6] We note that 2020 amendments to the Virginia Human Rights Act repealed certain provisions relied on in *Doss*. *See* 2020 Va. Acts ch. 1140. The Supreme Court has not yet addressed whether the holding of *Doss*—barring VHRA *Bowman* claims—continues to apply to the amended statute. Regardless of that particular issue, the underlying legal principle remains clear: a statute that provides its own remedial scheme cannot also support a *Bowman* claim for wrongful discharge. *See Concerned Taxpayers*, 249 Va. at 330; *Vansant & Gusler, Inc.*, 245 Va. at 360. Federal courts applying Virginia law have consistently come to this conclusion. *See, e.g.*, *Hice v. Mazella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022).

any employee of a sheriff's office who has been terminated for cause," to determine whether the reinstatement decision "was consistent with provisions of law and written policy." Code § 15.2-1507(A)(7), (A)(9), and (B).[7] Allowing appellant to maintain a *Bowman* claim based on the anti-retaliation policy in Code § 15.2-1507(A)(1)(iv) would circumvent and render meaningless the statute's express limitations on judicial review.

Appellant argues that he was unable to use the remedy in Code § 15.2-1507 because the City "arbitrarily" imposed the LEOPGA procedure. However, even assuming the truth of this allegation, nothing in the amended complaint demonstrates that appellant was precluded from pursuing his retaliation claim, only that he would have preferred the grievance procedure in Code § 15.2-1507. The perceived procedural violation should have been addressed in accordance with Code § 15.2-1507(A)(7)(a):

> After the initial filing of a written grievance, failure of either party to comply with all substantial procedural requirements of the grievance procedure, including the panel or administrative hearing, without just cause shall result in a decision in favor of the other party on any grievable issue, provided the party not in compliance fails to correct the noncompliance within five workdays of receipt of written notification by the other party of the compliance violation. Such written notification by the grievant shall be made to the chief administrative officer, or his designee.

Thus, appellant was required to provide written notice to the City to give the City an opportunity to cure the noncompliance. The amended complaint, however, failed to allege that appellant requested to proceed under Code § 15.2-1507 or provided written notice to the City of any noncompliance. The circuit court only had authority to consider the issue of noncompliance if appellant had taken these steps and then filed a petition for review. *See* Code § 15.2-1507(A)(7)(b) ("Compliance determinations made by the chief administrative officer shall be subject to judicial review by filing

---

[7] The statute also allows either party to petition the court for an "order requiring implementation of the hearing decision." Code § 15.2-1507(A)(11).

[a] petition with the circuit court within 30 days of the compliance determination."). Further, appellant did pursue the retaliation claim: he presented it to the panel convened under the LEOPGA and lost. He cannot use a *Bowman* claim to circumvent the limits of judicial review expressed in Code § 15.2-1507.

The public policy exception recognized in *Bowman* contemplated the absence of another remedy. 229 Va. at 540. Here, unlike *Bowman*, the anti-retaliation goal of Code § 15.2-1507(A)(1)(iv) can be fulfilled through the remedy provided not only by the statute itself, but also through the LEOPGA. An additional remedy, fashioned through a public policy exception to the at-will employment doctrine, is not needed. Therefore, the court did not err in finding that appellant failed to state a cognizable *Bowman* claim based on allegations of retaliation for prior use of the grievance procedure.

B. *Bowman* Claim Alleging Denied Right to Elect Grievance Procedure

Appellant also argues the court erred by refusing to recognize a *Bowman* claim for wrongful discharge based on allegations that his termination violated a public policy protecting a police officer's right to choose the procedure for an employment grievance, as expressed in Code § 9.1-502.

Code § 9.1-502(B), a provision within the LEOPGA, provides as follows: "A law-enforcement officer may proceed under either the local governing body's grievance procedure or the law-enforcement officer's procedural guarantees, but not both."

Appellant argues that the LEOPGA as a whole guarantees certain "minimum rights" specifically to "law enforcement officers," as defined in Code § 9.1-500, and that one of those rights is the election of a grievance procedure under Code § 9.1-502(B). He claimed that the City "arbitrarily chose" the LEOPGA, which resulted in his discharge. Thus, appellant attempted to allege a Scenario 2 *Bowman* claim. As stated above, a Scenario 2 *Bowman* claim asserts that the

"public policy violated by the employer was *explicitly* expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection." *Francis*, 293 Va. at 172 (emphasis added) (quoting *Rowan*, 263 Va. at 214). The "explicitly expressed" requirement is essential to a cognizable Scenario 2 *Bowman* claim. *See id.*; *see also City of Virginia Beach*, 259 Va. at 232 (requiring "explicit statements of public policy (*e.g.*[,] 'It is the public policy of the Commonwealth of Virginia [that] . . .')" (second and third alterations in original) (quoting *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 105 (1994))).[8]

Code § 9.1-502(B) does not contain an explicit statement of public policy. Although the statute requires that employees elect between available grievance procedures, the statute does not expressly characterize the employee's election as "the public policy of the Commonwealth." *City of Virginia Beach*, 259 Va. at 232. Absent express language, Code § 9.1-502(B) could just as reasonably be construed as expressing a public policy that a law enforcement officer cannot proceed under both the City's grievance procedure and the LEOPGA. Considering that *Bowman* claims are narrow exceptions to the employment at-will doctrine, we conclude that Code § 9.1-502(B)—which lacks an explicit statement of public policy—cannot support appellant's *Bowman* claim.

### III. 42 U.S.C. § 1983 and Withholding Exculpatory Evidence

Finally, appellant argues the court erred by "refus[ing] to recognize a valid cause of action under 42 U.S.C. § 1983" based on allegations that the City violated his due process rights by withholding exculpatory evidence during the employment grievance process.

The amended complaint alleged that appellant had no opportunity to review "exculpatory documents"—i.e., documents that would show "there was no 'homicide' case[]file in the

---

[8] *Lockhart* recognized a *Bowman* claim based on a public policy against gender discrimination, which was explicitly expressed in the VHRA. 247 Va. at 101-05. However, *Lockhart* predated the 1995 amendments that were found to preclude VHRA *Bowman* claims. *See Doss*, 254 Va. at 372.

Winchester City Police Department" and therefore no basis for finding that he had mishandled homicide case file "evidence." The "exculpatory documents" appellant sought to review consisted of (1) "the case file in question to show that it was not a 'missing person' or 'potential homicide investigation,'" and (2) "a disciplinary document showing that a civilian employee was responsible for much of the disarray in the property and evidence room blamed on [appellant]." Appellant alleged that "[b]y withholding this evidence, the [City] failed to provide [him] with a meaningful post-termination hearing, which is a requirement of due process."

42 U.S.C. § 1983 ("Section 1983")[9] allows individuals to sue a government actor for compensatory damages and attorney fees to redress a constitutional violation. *See Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (noting that Section 1983 created a "species of tort liability" for violation of civil rights). To state a valid Section 1983 claim, the "essential elements" are "(1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived [the] plaintiff of a right, privilege[,] or immunity secured by the Constitution or laws of the United States." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988). "If there is no violation of a federal right, there is no basis for a [S]ection 1983 action . . . ." *Id.* Section 1983 claims are frequently due process claims. *See id.*

A public employee who asserts a grievance is "entitled not only to certain statutory protections spelled out in the grievance process, but also to certain constitutional protections." *Shifflett v. Hill*, 82 Va. App. 367, 380 (2024). The employee is "entitled to oral or written notice of

---

[9] Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The "touchstone" of procedural due process is "fundamental fairness." *Walker v. Forbes*, 292 Va. 417, 423 (2016) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). In accordance with these principles, the LEOPGA outlines a process for giving officers written notice and an opportunity to respond to charges against them. *See* Code § 9.1-502(A). The Supreme Court has held that "elaborate statutory grievance procedures more than satisfy the minimal requirements of due process." *Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 664 (2009) (addressing the state grievance procedure in Code §§ 2.2-3000 to -3008).

The amended complaint shows that the City satisfied the minimal requirements of procedural due process in terminating appellant's employment. It gave appellant notice, an explanation of the evidence against him, and an opportunity to respond. *See Loudermill*, 470 U.S. at 546; *see also* Code § 9.1-502(A). On July 2, 2021, appellant received a written "Advanced Notice of Discipline" that he was being terminated pursuant to the results of IA-21-03, which determined that in 2012 and 2013 he mishandled property and evidence relating to the death of Kimberly Alexander. He was afforded a hearing to contest the termination. At the hearing, he was allowed to explain that he had organized the Kimberly Alexander materials into an "incident report" and therefore had not mishandled any "property and evidence" or "case file" as those terms were used in the department's policy. Although appellant alleged that he was unable to "show" this defense without access to the documents requested, due process in this context afforded only an "opportunity to present his side of the story" and did not include a right to the City's documents. *Loudermill*, 470 U.S. at 546.

The Supreme Court recently addressed a locality's obligation to produce documents under appellant's preferred grievance procedure, Code § 15.2-1507. *See City of Hampton v. Williamson*,

302 Va. 325 (2023). This statute requires that "the grievant and his attorney, at least 10 days prior to the scheduled hearing, shall be allowed access to and copies of all relevant files intended to be used in the grievance proceeding." Code § 15.2-1507(A)(10)(b)(3). The Supreme Court held that the statute does not require a locality to produce documents it does not intend to use at the grievance hearing, even where the documents are requested by the grievant. *Williamson*, 302 Va. at 335-37.

Although *Williamson* was a statutory construction case, the Court "acknowledge[d] that this [interpretation] may, at times, lead to unfair practices," including that "a locality with exculpatory evidence would not be required to produce this evidence to a grievant if it did not intend to use it the hearing." *Id.* at 337 & n.3. Nevertheless, the Court explained as follows:

> A locality, however, still must satisfactorily demonstrate the rationale behind its employment decision. If a locality declines to utilize files it may have actually relied upon in making an employment decision, that is its prerogative. Consequently, the locality risks not being able to persuade the panel or hearing officer that its decision was justified. Moreover, a grievant's inability to access all of a locality's files does not dictate a losing outcome because "[t]he grievance procedures presuppose that the grievant will have evidence to support his position."

*Id.* at 337 (alteration in original) (quoting *Burdeau v. Trs. of Ca. State Colls.*, 507 F.2d 770, 775 (9th Cir. 1974)).

The Supreme Court in *Williamson* also emphasized that "there is no common law right to discovery" nor any "general constitutional right to discovery." *Id.* at 333. Further, "[a]lthough due process does require, in criminal cases, that the prosecution disclose exculpatory evidence to the accused [under] *Brady v. Maryland*, 373 U.S. 83, 87 (1963), this requirement has not been extended to administrative hearings." *Id.* at 334; *see also Gunter v. Va. State Bar ex rel. Seventh Dist. Comm.*, 241 Va. 186, 190 (1991) (stating that an attorney does not have a "procedural due process right to discovery in a disciplinary proceeding").

Appellant argues that he is not seeking to extend *Brady* protections to employment grievances but, rather, is making a "fact-specific argument" that in this "unique case," the City's withholding of documents violated his due process rights, preventing him from having a meaningful hearing. He contends that the "unique" aspects of this case are that the City (1) deliberately withheld documents central to his defense, and (2) arbitrarily imposed the LEOPGA. In support, he relies on *Greene v. McElroy*, 360 U.S. 474 (1959), in which the United States Supreme Court stated that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the [g]overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* at 496. Appellant argues that *Greene* requires tailoring due process requirements to the circumstances presented; here, because appellant "knew that a particular document was controlling and exculpatory in his grievance, and he repeatedly requested the controlling and exculpatory document in that grievance process," the City's refusal to turn it over violated his due process rights.

Appellant's reliance on *Greene* is misplaced. In that case, the federal government revoked Greene's security clearance (an adverse employment action) based on allegations that he "had associated with Communists, visited officials of the Russian embassy, and attended a dinner given by an allegedly Communist Front organization." *Greene*, 360 U.S. at 478. The government "relied on confidential reports" that were "never made available" to Greene. *Id.* at 479. "The [g]overnment presented no witnesses" at Greene's administrative hearing, and Greene had "no opportunity to confront and question persons whose statements reflected adversely on him or to confront the government investigators who took their statements." *Id.* The U.S. Supreme Court held that, in the absence of explicit authorization from either the president or Congress, the government was not authorized to revoke Greene's security clearance in a manner that deprived him of "the safeguards of confrontation and cross-examination." *Id.* at 508.

Here, the City notified appellant that he was being terminated for mishandling property and files related to Kimberly Alexander, and it articulated nine policy violations in an investigative report. Appellant had the opportunity to challenge these findings before the grievance panel and argue that he committed no policy violations because there was no "homicide" case file and therefore no "evidence" to mishandle. In this employment dispute, appellant had ample opportunity to respond to and attempt to rebut the findings of the investigative report. Because due process did not require the City to produce the documents requested by appellant, we conclude that he failed to state a Section 1983 claim.

CONCLUSION

The court did not err in sustaining the City's demurrer to appellant's amended complaint. Therefore, we affirm the judgment dismissing the case with prejudice.

*Affirmed.*